## GROSSHART et al. v. SHAFFER.

No. 4034.   Opinion Filed September 14, 1915.

Rehearing Denied November 9, 1915.

(152 Pac. 441.)

1.   **TRIAL—Refusal of Instruction—Issues.** Although a requested instruction may correctly state an abstract rule of law, if it is not applicable to the issues involved, it is not error to refuse to give it to the jury.

2.   **APPEAL AND ERROR—Damages— Physicians and Surgeons— Remittitur—Personal Injuries—Excessive Recovery—Sufficiency of Evidence.** The evidence has been examined and found sufficient to sustain the verdict of the jury, which was in itself not excessive; and, if the court committed error in requiring a **remittitur,** it was in favor of plaintiff in error, and he cannot be heard to complain.

3.   **INSTRUCTIONS.** The instructions to the jury, considered as a whole, substantially stated the law applicable to the case.

(Syllabus by Brewer, C.)

*Error from District Court, Tulsa County;*
*L. M. Poe, Judge.*

Action by Norman Shaffer against Ross Grosshart and another. Judgment for plaintiff, and defendants. bring error. Affirmed.

*P. E. Magee,* for plaintiffs in error.

*George L. Mann, J. E. Thrift,* and *L. B. Jackson,* for defendant in error.

Opinion by BREWER, C. Norman Shaffer, as plaintiff below, sued Ross Grosshart, surgeon, and the Grosshart Sanitarium, a. corporation, for damages on account of personal injuries alleged to have been received by him through the negligence of said defendants. At a trial, the jury returned a verdict in favor of plaintiff, against both defendants, for $5,000, of which amount the court required a *remittitur* of $2,500, as a condition to letting the verdict stand.

The circumstances out of which this suit arose may be briefly summarized as follows: Plaintiff employed Dr. Grosshart to perform an operation for hernia, agreeing to pay him therefor $100, and prior to the operation went to the Grosshart Sanitarium, of which Dr. Grosshart was superintending physician, an officer and stockholder, and was given a room. After the operation was. performed, plaintiff was taken to the room assigned him and placed in bed, while still under the infiuence of an. anæsthetic. A rubber bottle, filled with very hot water, had been placed in the bed, and the unconscious man was laid upon it, and was burned on his back severely. The witnesses described the wound as being 15 to 18 inches in diameter. He also received a smaller burn on his side. From these burns he was under treatment for

a number of months.  The testimony clearly shows that the burns were very severe, and that they caused him excruciating pain and agony.

There is no contention that the judgment against the sanitarium is not warranted.  The contest waged here regards the liability of Dr. Grosshart.  The plaintiff sued upon the theory that both were liable, that his contract with Dr. Grosshart included hospital and nurse attention, and that Dr. Grosshart was liable because of his own negligence and want of care, and that he was liable for the negligence of those in charge of the hospital on the theory that they were his agents.  The surgeon contended that his contract was merely to perform the operation, and that he performed it skillfully and without negligence, and if plaintiff's injuries were the result of negligence, it was because of the negligence of the hospital employees, who were in no sense his agents.  In his brief here, as plaintiff in error he urges: (1) That the proof did not show agency; (2) that it did not show negligence upon his part to justify a verdict against him; (3) excessive verdict; (4) error in permitting a *remittitur;* (5) error in refusing to give certain requested instructions.  Some of these points will need no special consideration.

It seems that most reliance for a reversal is placed upon the claim that there is not sufficient evidence to justify the verdict as to Dr. Grosshart.  It is true that considerable stress is laid upon the claim that the hospital employees were not agents of the surgeon, under the proof in the case, but as we view the whole record, we shall lay aside this question; for we are firmly convinced that there is sufficient evidence in the case to justify the jury in believing and finding that the surgeon

failed to exercise proper care, after the operation was performed, and that the injuries were the result of such want of care, and, with the defendant in error, we believe that the surgeon's own testimony affords sufficient justification for the conclusion stated. We are sure from his own statement, when considered in the light of other facts either admitted or in dispute, that the conclusion we have reached is a proper one.

The doctor testified, in substance, that when he had about completed the operation, he concluded from certain indications that the patient was about to go into a state of collapse; that, so believing, he called to a young lady who had formerly worked in the hospital, but who was no longer in its employ, and asked her to prepare the bed and room for a patient in collapse; that this preparation required as much heat as could be reasonably obtained, and included heating the bed with hot-water bottles; that when he told the girl to prepare the room, he understood, and she understood, that this would be the preparation made. The doctor then picked the patient up in his arms and carried him to this room and laid him in the bed, and incidentally on the rubber bag full of very hot water. Up to this point, no employee in the hospital is involved. The doctor himself caused the hot-water bottle to be in the bed, through the assistance of a person of his own choice, not connected with the hospital, and then presently laid the man on the bottle. Other proof shows that the man in his unconscious condition lay there a very short time, evidently until the bottle began to burn his body, when he aroused, and in returning to consciousness showed signs of great agony, crying out aloud that he was "burning up," that his back "was burning," and that his exertion became so violent that it took four or five

people to hold him in the bed and on the bottle, and they did hold him there for quite a length of time. Finally they turned him over on his side, which probably accounts for the wound found there. Some of the witnesses state that Dr. Grosshart was in the room while this was going on. The doctor says he was out in the hall most of the time, preparing for a saline injection, to be used as a treatment for collapse, which he says existed. The doctor further says that the patient was held in the bed for the reason that it was believed he was in delirium, and that his actions were such as often attend the coming out from under an anæsthetic. The nurse, who assisted in the operation and who was present all the time, testified that she saw no signs of collapse, and that she did not believe the patient was in such a state. It may be observed that a bystander in the sick room, a friend of plaintiff's, seeing his agony and suffering, offered the suggestion that there might be something in the bed, and that one of the nurses pulled the hot-water bottle from under the man and held it behind her and took it out of the room.

So it seems to us that, laying aside the question of agency, and whether or not the doctor was responsible for the acts of the attendants, he was certainly responsible for his own acts, and, as has been seen, they consisted in directions, which included the placing of the hot-water bottles where they were. He placed the man in the bed himself. The evidence shows that he saw at least a portion of the struggles the man made, and the unusual effort it required to hold him down, and the cries the man made that his "back was being burned." Now it seems to us that, under this situation, if the doctor had been exercising that care and solicitude for the welfare of his unconscious patient that the law requires and

the dictates of humanity would suggest, he would have associated the idea of the hot-water bottle he had directed to be placed in the bed with the man's suffering, and his unusual and violent struggles, together with his statements as to burning. We do not mean to condemn the doctor, nor even to say that he was in fact negligent, and we appreciate his viewpoint, which evidently was that the nurse had removed the hot-water bottles to one side, and that the patient's struggles were but unusually severe manifestations of the usual phenomena observed when patients are coming from under an anæsthetic, and that, so believing, he permitted the patient to be held on the bed, causing his injury. What we do say, however, is that, taking the situation as we find it, and as the jury observed it, there was ample evidence to justify them in finding that the doctor had not exercised proper care; and, having so found, we have no right to dispute the verdict.

2.   The complaint that the court improperly refused requested instructions is without merit. The first requested instruction refused was not applicable to the facts in the case. There is no claim made, nor proof to show, that the actual operation was not carefully and skillfully performed.

The second instruction discussed was fully covered in the general charge of the court, which consisted of 26 separate paragraphs, and which, as a whole, was so fair to the defendant and so fully covered his theory of the case that none of them were excepted to.

3. The verdict was not excessive. The defendant undertakes to figure out by a mathematical calculation from the evidence the value in dollars and cents of the loss of time while the patient was utterly incapacitated,

Grosshart et al. v. Shaffer.

and the loss because of decreased earning capacity, and the figures show that "by the most liberal computation, his loss of wages for the alleged injury could not exceed $1,000." The defendant in error, with equal care, figures that from the evidence the actual loss in money was something like $1,500; but neither of them has figured, nor is it capable of computation, the proper amount of compensation for the pain and agony he endured. The plaintiff testified that his wounds were so severe that the surgeon had to cut away and remove the burned flesh, and that it caused such agony that it could not be entirely accomplished at one time, but was finished upon another day. The trial court heard the case, and saw the parties, and ordered a *remittitur*, and it was made; and as the lights before him were better than ours, we have no disposition to criticize or question his judgment; but we believe that this came nearer being error than anything else in the case. This will answer the claim put forward that the verdict was the result of prejudice and passion.

We believe there was no substantial error in the case, and the judgment of the trial court should be affirmed.

By the Court: It is so ordered.