## INCORPORATED TOWN OF WAINWRIGHT v. EUREKA FIRE HOSE MFG. CO.

No. 11274—Opinion Filed May 29, 1923.

Rehearing Denied Sept. 18, 1923.

1. **Attorney and Client—Authority to Compromise Claim.**

It is not within the power of an attorney at law to compromise and settle his client's claim for less than the full amount without authorization of his client to do so.

2. **Same—Apparent Authority of Attorney— Rights of Client and Innocent Parties.**

The owner and holder of a warrant of an incorporated town placed it in the hands of M., an attorney at law, for collection when the proper levy should be made therefor. B., an attorney, employed by the law firm of

M., wrongfully procured possession of the warrant without the knowledge or authority of M. or any member of the law firm, and induced the trustees of the incorporated town to come to the offices of M., where he was at the time in possession of the offices and acting within the scope of his apparent authority, and induced them to make a compromise settlement for less than the face of the warrant, and embezzled the money received by him in such compromise settlement. Held, that the client may ignore the compromise settlement and recover the full face of the warrant and interest, less the amount so paid in good faith by the municipality.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from Superior Court, Muskogee County; Guy F. Nelson, Judge.

Action by Eureka Fire Hose Manufacturing Company, a corporation, against the Incorporated Town of Wainwright. Judgment for plaintiff, and defendant brings error. Affirmed, on condition of a remittitur; otherwise, reversed and remanded for a new trial.

Brooks & Brooks, for plaintiff in error.

Mosier, Greenslade & Reynolds, for defendant in error.

Opinion by RAY, C. This action was commenced March 8, 1919, against the incorporated town of Wainwright to recover on a warrant issued to the Eureka Fire Hose Manufacturing Company in the sum of $499.68. The petition, in addition to the allegations necessary to recover on such an instrument, alleged that on or about the 12th day of July, 1916, the warrant was stolen from the plaintiff, and alleged the warrant to be wrongfully in the possession of the defendant. The defendant answered, in substance, that the warrant was paid in full on the 25th day of September, 1916; denied that the warrant was wrongfully in its possession, and alleged that the warrant was paid in full and came into its possession without any notice or knowledge of any wrongdoing. A copy of the warrant with the indorsements thereon was set out as an exhibit and is as follows:

"Claim No. 36-37, Series 1915-1916, Warrant No. 37 $499.68/100 General Warrant, Treasurer of the City of Wainwright, Oklahoma. City Clerk of Wainwright, Okla. Nov. 18, 1915.

"Pay to Eureka Fire Hose Mfg. Co., or bearer,

"Four Hundred Ninety-nine—68/100 Dollars with interest at 6% from date of registration to legal maturity.

"Estimate approved for this fund, $679.07 Drawn on this fund to date, $577.78. Bal. to credit of funds, $101.29.

"For hose bought, dated 1912, out of the General fund of the City, by order of the Council.
Attest:

"Clyde C. Adair, Clerk,
"J. H. Hobbs,
"Chairman Board of Trustees.
"Indorsements.
"For collection.
"Eureka Fire Hose Mfg. Co.
"By Mosier and ————
"No. 7167 A. Reynolds.
"Paid in full this 25th day of Sept. 1916.
"Eureka Fire Hose Co.
"By K. H. Burgess, Atty."

Jury was waived and the case tried to the court. Judgment was for plaintiff for the face of the warrant and interest, and the defendant appeals.

There is no apparent conflict of evidence. Some time prior to the issuance of the warrant, the plaintiff, through its attorney, John H. Mosier, of Muskogee, recovered a judgment against the town of Wainwright and the warrant sued on was issued to the plaintiff in satisfaction of that judgment. The plaintiff company left the warrant in the hands of its attorney, J. H. Mosier, whose law firm was at that time known as Mosier, Greenslade & Reynolds, for collection when the proper levy had been made for that purpose. The law firm of Mosier, Greenslade & Reynolds did a considerable collection business and had in its employ one K. H. Burgess, who had charge of whatever collections were assigned to him by any member of the firm. He had authority to make collections and give receipts by signing the firm's name, but had no authority to indorse checks for the firm. It does not appear from the evidence what other duties he performed in and around the law offices of Mosier, Greenslade & Reynolds. Some letters were written by the law firm of Mosier, Greenslade & Reynolds to the proper authorities of the town of Wainwright in reference to the payment of the warrant and, in response to a letter from that firm (whether written by any member of the firm of Mosier, Greenslade, & Reynolds or by Burgess, is not disclosed), the trustees of the town of Wainwright and the town treasurer went to the law offices of Mosier, Greenslade, & Reynolds in the city of Muskogee on the 25th day of September, 1916, for the purpose of reaching some settlement of this warrant. They met with Burgess in the offices of Mosier, Greenslade, & Reynolds and he assumed to be acting for that firm. Proposi-

tions were made back and forth between the town trustees on the one side and Burgess on the other, looking to a compromise settlement. These four representatives of the town of Wainright were in the offices of Mosier, Greenslade & Reynolds for a considerable time in the forenoon, and again for something like an hour in the afternoon. They finally reached an agreement of compromise whereby the trustees of the town agreed to pay $400 in full settlement. The trustees of the town, when they had reached an agreement with Burgess, suggested that they should have the O. K. of Mr. Mosier to the compromise. Burgess left the room and returned and made a statement, in substance and to their satisfaction, that the compromise settlement was satisfactory with the law firm of Mosier, Greenslade & Reynolds. The town treasurer then drew his check on the Farmers' State Bank of Wainwright, payable to the order of Eureka Fire Hose Manufacturing Company in the sum of $400, and Burgess indorsed the warrant: "Paid in full this 25th day of Sept., 1916, Eureka Fire Hose Co. by K. H. Burgess," and delivered the warrant to the treasurer of the town of Wainright. Nothing more was heard by the authorities of the town of Wainright about the warrant until about the time this action was commenced more than two years later.

Burgess took the $400 check given him in settlement of this warrant and indorsed it as follows: "Deposited for collection. Eureka Fire Hose Mfg. Co., King H. Burgess Atty.," and deposited it in the Muskogee National Bank for collection. In due course the check was paid and the money was appropriated by Burgess to his own use and benefit and was never turned in to the law firm or the company and they, or any of them, had no knowledge of this settlement until some tim in 1919, when Burgess entered a plea of guilty of embezzlement of funds and was sentenced to the penitentiary. At the time of sentence Burgess made and furnished to J. H. Mosier a list of what purported to be his defalcations, larcenies, and forgeries, in which he listed this particular warrant as having been stolen from the cash drawer of the safe of Mosier, Greenslade & Reynolds. He detailed the circumstances of the settlement with the trustees of Wainwright, and the indorsement of the check given by the treasurer to the plaintiff and of his embezzlement of that money. The evidence shows that this warrant was left with J. H. Mosier, as attorney for the plaintiff, for collection with the proper levy had been made to pay it; that it was deposited by him in the cash drawer of his safe, where

he believed it still was until he was informed by Burgess, at the time of his conviction, of its disposition by him. The plaintiff company had never authorized Mosier, Greenslade & Reynolds, or any of them, to compromise this claim or do any thing other than collect it in full when the proper levy had been made and the funds realized for its payment. The law firm of Mosier, Greenslade & Reynolds, or any member of the firm, never at any time placed this warrant in Burgess' hands or authorized him to collect this warrant or present it for collection, and never at any time approved the compromise settlement. The officers and trustees of the town of Wainright, in the matter of his compromise settlement, acted in good faith and believed at the time of the settlement that they were dealing with the proper representative of the law firm of Mosier, Greenslade & Reynolds, duly authorized to make the compromise.

The several assignments of error are reduced by counsel for plaintiff in error to two propositions: (1) Was the authority conferred upon the firm of Mosier, Greenslade & Reynolds assignable? and (2) Was Burgess acting within the scope of his apparent authority?

Whether discussed under counsel's first or second proposition, it is clear that Burgess had no greater authority than the law firm of Mosier, Greenslade & Reynolds had, and, under the decision of this court, that firm was not authorized to effect a settlement for less than the face of the warrant and interest. And in so far as the compromise settlement by which Burgess undertook to settle for less than the face value of the warrant is concerned, it is immaterial whether he was acting under an apparent authority or direct authorization of the firm of Mosier, Greenslade & Reynolds. In either event he could not bind the Eureka Fire Hose Manufacturing Company by such an unauthorized settlement. The question as to whether an attorney can settle a claim for less than the full amount without the authorization of the client has been before this court a number of times. In Scott v. Moore, 52 Okla. 203, 152 Pac. 823, this court said:

"An attorney has no authority to compromise a matter in his hands as attorney, without the specific authority of his client. Any settlement so made is without authority of law and void; and, where the client denies that the attorney was given authority to compromise such claim, the burden is upon the attorney to show by a preponderance of the evidence that he was given such authority; or that the client, after the making of such compromise, approved it, or received the benefits thereof."

It is clear that the compromise settlement was void, and that the plaintiff should recover in this action, but is plaintiff entitled to recover the full face value of the warrant with interest, or is the town of Wainwright entitled to credit for the $400 paid to Burgess? To properly answer this question it will be necessary to determine whether or not Burgess was acting within the scope of his apparent authority. Thornton on Attorneys at Law (vol. 1) sec. 294, citing a great number of authorities to sustain the text, says:

"The general rule is that an attorney is bound by the acts of a clerk, or other person, in charge of his office, or of business entrusted to tne attorney, in so far as such person acts within the apparent scope of his authority."

It is not made clear by the evidence in just what capacity Burgess was acting in his employment with this law firm, but it is clear to us that under all the evidence in the case the officers of the town of Wainwright acted as ordinary, reasonably prudent men would have done. They had come in response to a notice. They knew that Mosler, Greenslade & Reynolds had control of the litigation. They knew that Burgess was their employe, acting for them. They found him in control of the offices of Mosier, Greenslade & Reynolds. He conducted the negotiations without apparent concealment. He gave it the appearance of an ordinary transaction of the office. In our judgment, Burgess was acting within the scope of his apparent authority and, in considering the law applicable to the case, we will consider it as though this compromise settlement was made by the law firm of Mosier, Greenslade, & Reynolds.

Counsel for the plaintiff insist that because this compromise was unauthorized and void, the plaintiff may, by disregarding the settlement and compromise, recover the full amount of the warrant, notwithstanding the payment of $400 by the defendant. In support of this they have cited Hamberger v. White, 54 Okla. 736, 154 Pac. 576; Turner v. Fleming, 37 Okla. 75, 130 Pac. 551; Ambrose v. McDonald, 53 Cal. 28; Jones v. Inness, 32 Kan. 178, and Miller v. Lane, 13 Ill. App. 648.  k

Turner v. Fleming, supra, and Ambrose v. McDonald, supra, are not in point, but it becomes necessary to examine the other cases cited by counsel.

In Jones v. Inness, supra, the 4th paragraph of the syllabus is as follows:

"Where an attorney at law does compromise and settle his client's claim, without any authority from his client, and in such settlement the attorney receives from the adverse party a consideration which is much less than the client's demand, the client may ignore such compromise settlement, and treat the same as a nullity, and recover the full amount of his demand from the adverse party."

An examination of the opinion discloses that the question as to whether or not the plaintiff could recover for the entire amount of the indebtedness without regard to the amount received by the unlawful compromise settlement was not before the court. Justice Valentine, who wrote the opinion, said:

"It appears from the record brought to this court, that on the trial of the case in the district court the testimony was confined principally to the two principal issues raised by the pleadings, to wit: (1) Did the defendant, Jones, cause and procure the plaintiff, Inness, to be drugged, and while he was under the influence of drugs so administered, induce him to play at cards, and thereby obtain his money? (2) Was there any settlement between the parties, as alleged in the defendant's supplemental answer? Upon these issues there was sufficient evidence to authorize the jury to find a verdict in favor of either party; but the jury in fact found in favor of the plaintiff and against the defendant. Their finding was general, and they made no special findings. No question is raised in this court with regard to the admission or rejection of evidence, except as to certain testimony given by the witness R. A. Friedrich. No instructions were asked by either party in the court below, and no exception was taken to any of the instructions given by the court below; and indeed the only question now presented to this court is, whether the evidence introduced on the trial in the court below is sufficient to sustain the verdict of the jury, and whether the said testimony of the said R. A. Friedrich is competent or not."

In Hamberger v. White, supra, the second paragraph of the syllabus is identical with the fourth paragraph of the syllabus of the Kansas case above set out. It is evidently copied literally. But the question here presented was not before this court in that case. The attorney had settled his client's claim for 20 cents on the dollar as payment on the claim and sued for the balance. Plaintiff had recovered judgment for the balance of his claim in the lower court and this court affirmed the judgment. It could not have been in-

tended by the writer of the opinion to say that the plaintiff could recover the entire amount of the original claim without accounting for that part of the claim previously collected.

The case of Miller v. Lane, 13 Ill. App. Court Rep. 648, is directly in point and sustains the contention of counsel. In that case the plaintiff had recovered a judgment for $4,450. His attorney, without any authority, compromised and settled the judgment upon receipt of $1,600, entered satisfaction of judgment, and absconded with the money. The lower court, on motion, set aside the entry of satisfaction of the judgment, but ordered that a credit of $1,600 for the money received by the attorney be credited upon the judgment. Plaintiff appealed from that order allowing a credit of $1,600. The court said:

"Had the $1,600 been paid and received simply as a part payment on the judgment, leaving the balance to stand unsatisfied, appellant would have been bound, notwithstanding the failure of the attorney to pay over the money to him. But Uppercu undertook to discharge and satisfy the entire judgment, amounting to the sum of $4,450, upon the payment by the judgment debtor of $1,600. The money was neither paid by appellee nor received by Uppercu as a part payment. It was paid and received in satisfaction and extinguishment of the entire debt. Had appellant accepted the $1,600 or any part of it, he would thereby have ratified the act of his attorney in making the compromise and so have been bound by it, as he could not, under a familiar legal rule, affirm it in part, and avoid it as to the residue. Hunt v. Silk, 5 East, 249; Besley v. Dumas, 6 Bradwell, 291. It would be glaringly unjust to charge appellant with moneys which he not only never received, but which it was impossible for him to receive without forfeiting double the amount; which remained still unpaid upon the judgment."

The conclusion is based upon the proposition that as the attorney accepted the $1,600 in full settlement, the plaintiff could not accept the $1,600 without forfeiting the balance of the $4,450; that the acceptance of the $1,600 by plaintiff would have been a ratification of the compromise and he would have been bound by it; and the opinion says:

"It would be glaringly unjust to charge appellant with money which he not only never received, but which it was impossible for him to receive without forfeiting double the amount, which remained still unpaid upon the judgment."

The reasoning in this case is not strongly persuasive when considered together with

Hamberger v. White. In the latter case the client did accept the amount paid as full settlement and apply it on his claim as a partial payment, and he was not held to have ratified the compromise settlement, but, on the contrary, judgment for the recovery of the balance was affirmed on appeal.

The law, as we recommend it, is laid down in Thornton on Attorneys at Law (vol. 1) paragraph 220, page 397, where he says:

"In the absence of authority or ratification, however, the client may recover the full amount of the debt, less the sum paid to his attorney. Since an attorney employed to conduct a suit has power to receive payments on account of his client's claim, or, after obtaining judgment, to collect the same and to accept payments on account thereof, a payment to him of an amount less than the face of the claim or judgment, accepted by him in full satisfaction, will be treated as a payment on account, and his client will be entitled to have the satisfaction set aside only on condition that he acknowledge of record the receipt of the amount received by the attorney."

A number of cases from the different states are cited in support of this text, and the case of Miller v. Lane, supra, is cited by Mr. Thornton as an exception to the rule.

In this case, some innocent party must suffer the loss of $400, and it should be the one whose acts or negligence contributed most to that loss. This warrant has been outstanding and in the hands of Mosier, Greenslade & Reynolds for collection for almost four years. It has been presented for payment at the proper time by one held out by them to be a responsible representative of that firm and, in good faith, paid by the proper authorities of the incorporated town of Wainwright. It does not appear how long Burgess was retained in the employ of Mosier, Greenslade & Reynolds after the transaction, but it was approximately two and a half years before he pleaded guilty to a felony and disclosed this transaction. Whether or not restriction could or would have been made during that two and one-half years had the plaintiff or his attorneys, Mosier, Greenslade & Reynolds, made an attempt to collect the warrant at the proper time or within a reasonable time thereafter, we cannot say. We can say, however, that such attempt to collect was not made, and for that reason, none of the parties had opportunity to attempt a recovery from Burgess.

Whether that neglect is chargeable to the plaintiff or his attorneys, is not before us for determination, but, in our view of the

case, it cannot be charged to the incorporated town of Wainwright or any of its responsible officers. The judgment of the trial court should have been for the face of the warrant and interest less the $400 as of the date of its payment, September 25, 1916.

If, following the rule laid down in Haskell National Bank v. Stewart, 76 Okla. 58, 184 Pac. 463, the defendant in error, plaintiff below, shall file a remittitur for the sum of $400 and interest thereon from the date of its payment, September 25, 1916, within 15 days of the receipt of the mandate herein by the trial court, the judgment, thus modified, should be affirmed; otherwise, the judgment should be reversed and the case remanded for a new trial.

By the Court: It is so ordered.