## BAKER et al. v. SHAW.

No. 28691. Dec. 13, 1938.

Rehearing Denied Jan. 17, 1939.

Dudley, Hyde, Duvall & Dudley, for plaintiffs in error.

Fred M. Hammer, Major J. Parmenter, and A. B. Carpenter, for defendant in error.

PER CURIAM. The parties will be referred to as they appeared in the trial court. About 3 o'clock in the afternoon of July 1, 1937, the defendant's agent, J. T. Marshall, headed in a southerly direction on State Highway No. 48, driving a Ford V-8 delivery truck, collided with a Chevrolet gravel truck, the property of the plaintiff. After a jury trial the court entered judgment on the verdict for the plaintiff for $2,500.

At the time of the accident the plaintiff was engaged with others in a highway project about 7½ miles south of Ada, on Highway No. 48, and was between the signs posted about 100 yards from the location at which the accident occurred on either side to the north and south of said location, or, in other words, where such signs are usually posted in such highway projects. The defendants offered evidence to prove that the delivery truck was equipped with a governor that would not permit the delivery truck to attain a speed of over 35 miles an hour; that defendant Marshall slowed down, and therefore was going less than 35 miles an hour through the zone or

area when plaintiff suddenly swerved his truck in his pathway.

The nature of the evidence developed by the plaintiff regarding the accident can well be shown by the testimony of Hoyt Pryor, one of the three principal witnesses offered by the plaintiff. It is, substantially, that witness was employed as a checker on the project on July 1, 1937, and his duties were to check the gravel trucks as they came out and dumped their loads; that he had known the plaintiff, Sam K. Shaw, since he came on the job; that the plaintiff was engaged in hauling gravel by the contract; that the accident occurred in the afternoon at about 3 o'clock about six or seven miles southeast of Ada, on Highway No. 48. At the point where the accident occurred the standard roadbed was approximately 24 feet wide and was blacktop; that there were the usual shoulders on each side of the highway, and at this particular point it was a flat country with no drainage ditches on the side of the road; that there was a little old store building or abandoned filling station on the east side of the road and a gravel driveway around on the east side; that the defendant's truck was 50 or 75 feet away from the plaintiff's truck when witness first saw it, and the defendant's truck was making about 40 or 45 miles an hour when it hit the plaintiff's truck; that plaintiff had just driven up and dumped his load of gravel and the dumper had closed his gate back up; that plaintiff had dumped his gravel on the west side and when he completed, drove up 10 or 15 feet and began turning across the road; that the front end of the plaintiff's truck was about half way across the slab when the accident happened; that the defendant's truck struck the Shaw truck, or the plaintiff's truck, just behind the front wheels and the impact was such that it dragged plaintiff's truck almost off the slab and the Baker truck, or the defendant's truck, went 40 or 50 feet on the east side of the road toward the fence; that there was no traffic at the time coming from the north or the south, and nothing to obstruct the view; that the defendant's truck driver did not sound any horn or give any signal or warning at all; that there were highway signs, one to the north about 100 yards, bearing the words "caution, danger, gravel trucks ahead"; that shortly after the accident the defendant Marshall, driver of the truck, stated to witness that he didn't see the truck in time to stop.

Plaintiff was bruised about the head and neck and shoulders and was shortly rendered unconscious by reason of the accident. Dr. Margo, one of the physicians who testified for plaintiff, perhaps most accurately

described the condition of the plaintiff, and his testimony reveals that plaintiff had a stiff neck and suffered with headaches, sore chest, and discomfort of the lower abdomen at the time of his first examination, but negatives any permanent disability with the exception of the stiffness of the neck and head; stating that the injuries other than to the head and neck were of no consequence. For a while plaintiff wore a cast, and for a period up to and including the date of the last examination by Dr. Margo, which occurred August 13, 1937, was wholly incapacitated to perform any manual labor. At the date of the trial, which was December 3, 1937, plaintiff was still unable to do ordinary manual labor, according to the testimony of his family physician, Dr. Reeder. Dr. Reeder also substantially supported the testimony of Dr. Margo and furnished additional testimony relative to the bruises that he found on the body of the plaintiff directly after the accident. He also gave it as his opinion that in a case of an injury such as the one at bar, a person so injured could not be expected to recover soon after the accident, but said it sometimes took months and even years to recover.

Defendant first contends that the court erred in giving instruction No. 12, in which the court instructed the jury to take into consideration as an element of damages future pain and suffering. It is urged on behalf of the plaintiff that the objection to the instruction as to future pain and suffering cannot be made now because no exception was taken thereto prior to the verdict of the jury. The record shows a notation by the trial judge that the exception to this particular instruction was taken after the verdict. We have held in principle that an exception cannot be so taken. Incorporated Town of Stigler v. Wiley, 36 Okla. 291, 128 P. 118; Security Beneficial Ass'n v. Lloyd, 97 Okla. 39, 222 P. 544; Ryker v. Dickey, 177 Okla. 91, 57 P.2d 816; Wayne Tank & Pump Co. v. Harper, 118 Okla. 274, 247 P. 985; Doughty v. Laubach, 172 Okla. 42, 44 P.2d 105. In Ryker v. Dickey, supra, we said:

"Plaintiff complains of certain instructions given the jury, to which he did not except. One of the principal objects of section 360, O. S. 1931, is to require the party aggrieved by an instruction to except thereto before it is read to the jury, thereby giving the court an opportunity to correct it, and this court will not review such instruction unless it was excepted to at the time of the trial."

The purpose of an exception to the instruction to the jury is to inform the trial judge that it is error to give the same to the jury; and an exception to an instruction after the verdict has been returned comes too late. The reason for the rule is plain. The trial court apparently thought the evidence of the physicians supported the instruction given. After the instruction had been given and the verdict returned, the defendant excepted to the giving of the instruction and questioned the sufficiency of the evidence to sustain its import. Under the above authorities, such exception comes too late.

It is next urged that the verdict is excessive. We have held that a verdict will not be set aside for the reason that it is excessive unless it clearly appears that the jury has committed gross and palpable error or acted under some improper bias, influence, or prejudice or has totally mistaken the rules of law by which damages are regulated. Muskogee Electric Traction Co. v. Wimmer, 80 Okla. 11, 194 P. 107; City of Tulsa v. Wells, 79 Okla. 39, 191 P. 186; Sand Springs Ry. Co. v. Westhafer, 92 Okla. 89, 218 P. 525; City of Pawhuska v. Black, 117 Okla. 108, 224 P. 1114; St. Louis & S. F. Ry. Co. v. Simmons, 119 Okla. 1, 245 P. 894; Town of Hallet v. Stephens, 125 Okla. 157, 256 P. 921; J. C. Penny Co. v. Forrest, 183 Okla. 106, 80 P.2d 640; Graves v. Harrington, 177 Okla. 448, 60 P.2d 622; Shell Pet. Corp. v. Perrin, 179 Okla. 142, 64 P.2d 309; Fixico v. Harmon, 180 Okla. 412, 70 P.2d 114; Okla. Union Ry. Co. v. Bartrand, 129 Okla. 263, 264 P. 621; Grosshart v. Shaffer, 52 Okla. 204, 152 P. 441. In Town of Hallet v. Stephens, supra, we said:

"In an action for personal injury, a verdict of the jury will not be set aside for excessive damages unless it clearly appears that the jury has committed some gross and palpable error, or acted under some improper bias, influence or prejudice, or has totally mistaken the rules of law by which damages are regulated."

The defendants state the verdict appears excessive on its face, and therefore reflects passion and prejudice and gross injustice. We think not. Plaintiff testified that he made $7.50 per day and would make $10 had he not been injured by the accident. The testimony reflects that by reason of the accident not only had he done no work up to the date of the trial, but would not be able to work for at least a year after the trial. We cannot agree that the testimony of Dr. Margo and Dr. Reeder failed to disclose that the plaintiff had any permanent disability. In Graves v. Harrington, supra, the court pointed out that the evidence does not have to show to a certainty a permanent disability. We think the evidence shows at least a strong probability of future effects dis-

cussed in the last-mentioned authority, wherein it is held that a plaintiff is not required to prove beyond a reasonable doubt the future effect of his personal injury if the evidence discloses a strong probability of future effect. We think the testimony as above analyzed clearly shows that in all probability, if there is not a permanent disability, it will be a long time before plaintiff is able to earn any money or completely recover from his injury. We do not think the verdict is excessive.

The judgment of the trial court is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH, CORN, and HURST, JJ., concur.