FARRIS v. MASQUELIER
2022 OK 91
Case Number: 116555
Decided: 11/15/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 91, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

MARK FARRIS and JOLANA FARRIS, Husband and Wife, Plaintiffs/Appellants,
v.
PRESTON W. MASQUELIER and CANDY MASQUELIER, Husband and Wife, as Joint Tenants, Defendants/Appellees.

ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION III

¶0 Plaintiffs/Appellants filed suit in this water rights case claiming that Defendants/Appellees interfered with their rights by damming a stream that flows down to Plaintiffs/Appellants' property. After a jury verdict in favor of Defendants/Appellees, Plaintiffs/Appellants appealed, and the Court of Civil Appeals reversed finding error in the jury instructions and remanded the cause. This Court granted certiorari. Applying the proper fundamental error standard of review, we vacate the opinion of the Court of Civil Appeals and affirm the trial court's denial of the motion for new trial. We reverse the trial court's ruling on the denial of attorney fees to Defendants/Appellees and remand the matter for a determination of reasonable fees.

CERTIORARI GRANTED PREVIOUSLY; THE OPINION OF THE 
COURT OF CIVIL APPEALS IS VACATED; THE TRIAL COURT'S
JUDGMENT IS AFFIRMED IN PART, REVERSED IN PART AND 
REMANDED FOR FURTHER PROCEEDINGS.

Jason B. Aamodt and Matthew D. Alison, Indian and Environmental Law Group, PLLC, Tulsa, Oklahoma; and Trae Gray, Coalgate, Oklahoma, for Mark and JoLana Farris.

Jon E. Brightmire, Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa, Oklahoma; Kaylee Davis-Maddy and Michael J. English, Doerner, Saunders, Daniel & Anderson, L.L.P., Oklahoma City, Oklahoma; and Mark Walraven and Anthony Moore, Graft & Walraven, PLLC, Clinton, Oklahoma, for Preston and Candy Masquelier.

WINCHESTER, J.

¶1 At issue in this case is whether the Court of Civil Appeals, Division III, (COCA) correctly reversed the trial court's denial of a new trial after finding error in the jury instructions. We find COCA's reversal utilized an improper standard of review. Upon employing the correct standard, the trial court's ruling must be affirmed.

BACKGROUND AND PROCEDURAL HISTORY

¶2 Plaintiffs/Appellants, Mark and Jolana Farris (the Farrises), own property in Custer County, Oklahoma, downstream from property owned by Defendants/Appellees, Preston and Candy Masquelier (the Masqueliers). Both properties abut an unnamed tributary of the South Canadian River, known to the parties as Crow Springs Creek (the "Creek"). The Creek begins from an underground source on the Masqueliers' property and flows through other properties before reaching the Farrises and finally running into the Canadian River.

¶3 In January 2014, the Masqueliers constructed a dam on the Creek for the purposes of impounding some of the water from the Creek into a pond they also had constructed on their property. When the Farrises discovered the construction of the dam, they filed an application for an appropriation permit from the Oklahoma Water Resources Board ("OWRB") seeking to appropriate a portion of the Creek to irrigate crops and trees.

¶4 The Farrises protested the Masqueliers' application, citing interference by the Masqueliers with the Farrises' use of the stream. The OWRB conducted a multi-day hearing within which the nine-member board received evidence and heard expert testimony from the parties. The OWRB made numerous findings of fact and conclusions of law relating to each application and ultimately issued permits, with conditions, to each applicant. The permits issued to the property owners downstream from the Masqueliers each received permits superior to the Masqueliers' permit by virtue of being first to file.

¶5 JoLana Farris's permit allowed for an appropriation of 68.75 acre-feet of stream water per year to irrigate fifty-five acres of trees and crops, as requested. The OWRB noted in their findings that the Farrises would need to implement a plan to impound or store water as a condition of their permit.

¶6 In April 2016, the Farrises filed suit against the Masqueliers in district court in Custer County claiming that, as a result of the dam's construction, they no longer received adequate water flow to meet their lawful riparian and appropriative rights to the Creek waters. The Farrises further claimed they incurred damages for harm to their real property and a resulting inability to farm their land. The Farrises sued the Masqueliers for nuisance, negligence, negligence per se, unjust enrichment and punitive damages. They additionally sought an injunction to have the dam removed from the stream.

¶7 After a five-day jury trial, the jury returned a verdict for the Masqueliers on all claims and the trial court subsequently denied the request for an injunction. The trial court awarded costs to the Masqueliers but denied their request for attorney fees. The Farrises moved for a new trial and, after this request was denied, they appealed. The Masqueliers counter-appealed the denial of their attorney fees. On appeal, COCA found multiple errors in the jury instructions, reversed the trial court's decision, and remanded the case for further proceedings. The Masqueliers petitioned this Court for certiorari which we previously granted.

DISCUSSION

¶8 The Farrises allege that errors in the jury instructions limited their ability to present their case. Specifically, they assert the trial court provided incorrect, confusing, and prejudicial instructions concerning their negligence per se, interference and natural flow claims. They further argue that the trial court failed to properly frame the role of the OWRB for the jury causing the jury to place too much importance on the OWRB's findings. They also took issue with the trial court's rulings on various motions in limine as well as a host of other miscellaneous issues.

¶9 COCA agreed with the Farrises that the trial court failed to properly instruct the jury on the issues raised by the Farrises and overturned the trial court's denial of the motion for new trial. First, COCA found that the trial court failed to give a proper negligence per se jury instruction. The court found Instruction No. 19 failed to correctly state the law because it did not include the title "Negligence Per Se" and it also failed to apprise the jury of the Farrises' domestic riparian water rights claims. The court next determined that the trial court placed too much emphasis on the importance of the OWRB in the jury instructions and failed to properly frame the OWRB's role to the detriment of the Farrises' claims. Additionally, COCA held that the district court's rulings in limine were improper regarding the OWRB's requirement for the Farrises to provide their own water storage system before claiming interference with their water rights from the Masqueliers' dam.

¶10 The Masqueliers argue that COCA overturned the jury verdict based on errors in the jury instructions for which the Farrises failed to properly object during trial and that the appellate court employed an erroneous standard of review. They further argue that COCA relied on jury instructions the Farrises attached to their brief in chief on appeal but were never filed of record in the underlying case. Additionally, the Masqueliers point out that COCA issued its opinion before their Answer Brief was filed despite an extension of the due date caused by the pandemic. Accordingly, the Masqueliers assert that the COCA opinion failed to address their waiver arguments regarding the timeliness of the Farrises' objections to the jury instructions.

I. Allegations of Error in the Jury Instructions 

¶11 On appeal, the Farrises allege several errors in the instructions given to the jury. Prior to trial, both parties submitted proposed jury instructions to the trial court which were filed of record. At the close of all the evidence, the trial court rendered a final set of jury instructions and discussed these with counsel for both parties at a jury instruction conference before presenting the instructions to the jury. At this meeting, counsel for the Farrises made a few, limited objections on the record.

¶12 Specifically, the Farrises objected to a portion of Instruction No. 9 in which the Defendants' claims were set forth. The alleged offensive provisions were noted within the instruction to be the Defendants' (Masqueliers') contentions and not statements of law.

¶13 Preservation of an objection is key to a party's claim of error in the jury instructions given at trial. Statutory law provides the framework for making a proper objection:

A party excepting to the giving of instructions, or the refusal thereof, shall not be required to file a formal bill of exceptions; but it shall be sufficient to make objection thereto by dictating into the record in open court, out of the hearing of the jury, after the reading of all instructions, the number of the particular instruction that was requested, refused and is excepted to, or the number of the particular instruction given by the court that is excepted to. Provided, further, that the court shall furnish copies of the instructions to the plaintiff and defendant prior to the time and instructions are given by the court.

12 O.S. 2011, § 578Sullivan v. Forty-Second West Corp., 1998 OK 48961 P.2d 801Sullivan v. Forty-Second West Corp., 1998 OK 48961 P.2d 801

¶14 Fundamental error occurs when the trial court fails to accurately state the law and "compromises the integrity of the proceeding to such a degree that the error has a substantial effect on the rights of one or more of the parties." Sullivan, at ¶ 7, 784 P.2d at 802. While it is the trial court's duty to accurately state the law of the case, it is not the court's duty to frame the issues at trial. That responsibility lies with the parties to ensure that the jury instructions "accurately reflect the issues tendered by the evidence adduced at trial." Sellars v. McCullough, 1989 OK 155784 P.2d 1060

¶15 The very purpose of an objection to jury instructions is "to inform the trial judge that it is error to give the same to the jury; and an exception to an instruction after the verdict has been returned comes too late." Baker v. Shaw, 1938 OK 62886 P.2d 319Capshaw v. Gulf Ins. Co., 2005 OK 5107 P.3d 595

¶16 In Capshaw, the appellee complained of error in a verdict form presented to the jury. Both parties had submitted their own verdict forms and the trial court then rendered its version. Neither party objected at trial to the form given by the trial court. For the first time in a motion for new trial, appellee raised the issue of error regarding giving the form to the jury. The Court held that an exception to the verdict form "may not be interposed for the first time in a motion for new trial. To preserve that error for review here, Capshaw must have excepted to the blank verdict form at the pre-submission stage of the case, i.e., simultaneously with exceptions to jury instructions." Id. See also Anderson v. O'Donoghue, 1983 OK 76677 P.2d 648

¶17 In this appeal, COCA utilized an erroneous standard of review in overturning the trial court's denial of the motion for new trial. Instead, citing Smicklas v. Spitz, 1992 OK 145846 P.2d 36212 O.S. 2011, § 578

A. Instruction No. 19, Negligence Per Se

¶18 With respect to Instruction No. 19, the negligence per se instruction, counsel for the Farrises stated on the record before the instructions were given to the jury:

"We also believe that the negligence, per se, instruction should be submitted as we had provided it, with the specific references to the statutes that have been involved here -- that are being followed here. I think that's it, Your Honor."

Trial Transcript, Vol. 8, page 1659, lines 17-22. As read by the trial court to the jury, Instruction No.19 provides:

In addition to the duty to exercise ordinary care there are also duties imposed by [statutes/ordinances]. If you find that a person violated any law and the violation was the direct cause of the injury, then such violation in and of itself would make such person negligent. There was in force and effect in Oklahoma at the time of the occurrence the following statutes: Title 82, chapter 14 creating the Oklahoma Water Resources Board. (including OAC 785:25-3-7 (A)(1) which states: All dams subject to the Oklahoma Water Resources Board's jurisdiction shall have at least one outlet conduit of sufficient capacity to prevent interference with natural streamflow and injury of downstream appropriators and domestic users.

An administrative agency such as the Oklahoma Water Resources Board, which has been empowered by the State of Oklahoma to administer certain of the laws of the State of Oklahoma, may enact rules and regulations to do so. You are instructed that such rules and regulations enacted by an administrative agency have the force and effect of law, just as if they were enacted by the Oklahoma State legislature.

The Farrises' proposed instruction regarding negligence per se, Instruction No. 22, filed of record on July 5, 2017, reads:

Negligence per se -- Violation of Statute, Regulation, or Ordinance

In addition to the duty to exercise ordinary care there are also duties imposed by law. If you find that any of the Defendants violated any one of the following statutes or regulations and the violation was the direct cause of an injury to any of the Plaintiffs, then such violation in and of itself makes the Defendant or Defendants violating any one of the following statutes or regulations negligent, per se. The following statutes and regulations have been in force and effect in Oklahoma since before 2014 to the present:

60 O.S. § 105.5: Any person having a right to the use of water from a stream as defined by this act or Section in Title 60 of the Oklahoma Statutes whose right is impaired by the act or acts of another, or others, may bring suit in the district court of any county in which any of the acts complained of occurred.

Authority: Okla. Uniform Jury Inst. No. 9.10 (modified); 27A O.S. § 2-6- 105(A); 27A O.S. § 2-6-205(A); OAC 252:606-8-3(c)(17); OAC 252:606-8- 6(b)(7).

¶19 The Farrises admit to a scrivener's error in citing a non-existing statute, 60 O.S. § 105.5. On appeal, they assert the statute should have cited 60 O.S. § 6082 O.S. § 105.560 O.S. § 6082 O.S. § 105.5See Okla.Sup.Ct.R. 1.11(e), 1.26(a) and (b), and 1.33(d). See also, Chamberlin v. Chamberlin, 1986 OK 30720 P.2d 721Boyle v. ASAP Energy, Inc., 2017 OK 82408 P.3d 183

¶20 Instruction No. 19, as given to the jury, mirrors OUJI No. 9.10. It sets forth the correct definition of negligence per se

¶21 At no time before the instructions were submitted to the jury did the Farrises object to the lack of negligence per se in the title of the instruction as required by § 578 or claim that the instruction was misleading. Moreover, even if they had so objected, we do not find that failure to include the term "negligence per se" in the title would be grounds for overturning the trial court's decision or the jury's verdict. When appellate courts consider error in a jury instruction, the entire set of instructions is considered as a whole. Johnson v. Ford Motor Co., 2002 OK 2445 P.3d 86See also ABC Coating Co., Inc. V. J. Harris & Sons, Ltd., 1986 OK 28747 P.2d 266Id. at ¶ 9, 45 P.3d at 90-91. Here, Instruction No. 19 fairly instructed the jury as to the negligence per se claim by providing the definition of the term and a specific reference to the law that the Masqueliers allegedly violated.

¶22 Next, the Farrises contend that the negligence per se instruction should have also included a citation to statutes, 60 O.S. § 6082 O.S. § 105.5Sellars v. McCullough, 1989 OK 155784 P.2d 1060Bane v. Anderson, Bryant & Co., 1989 OK 140786 P.2d 1230Id. at ¶ 24, 786 P.2d at 1236.

¶23 After all the evidence was received at trial in the underlying matter, the trial court determined that OAC 785:25-3-7(A)(1) was the most pertinent ordinance supporting the Farrises' negligence per se claim as to the interference with the natural streamflow. The Farrises did not object to these instructions, aside from a statement that the instruction "should be submitted as we had provided it, with the specific references to the statutes that have been involved here..." However, the only difference between the trial court's negligence per se instruction and the Farrises' proposed instruction (the one filed of record) is the inclusion of an additional statute with an incorrect citation. As previously discussed, the statute cited in full by counsel for the Farrises was 82 O.S.2011 § 105.560 O.S.2011, § 60

¶24 Additionally, at no time before the jury instructions were submitted to the jury did the Farrises catch their citation error or request that 60 O.S.2011, § 60

¶25 Indeed, there is nothing at all in the Farrises' proposed jury instruction of record, Instruction No. 22, that even mentions this interference with the natural streamflow and their domestic or appropriative rights which is the crux of their claims. The trial court's instruction adequately covers this issue in its citation to the relevant ordinance, OAC 285:25-3-7(A)(1). The portion of 60 O.S. 2011, § 60

B. Jury Instructions regarding the Role of the OWRB

¶26 We now turn to the Farrises' blanket assertion that the trial court failed to properly instruct the jury regarding the role of the OWRB in this case or that the trial court erred in its "perceived import regarding OWRB involvement." Though required by our rules, the Farrises do not cite to specific allegations of error within the record or within the jury instructions as it relates to this alleged OWRB reference error. Okla.Sup.Ct.R. 1.11(e)("Where a party complains of an instruction given or refused, the party shall cite to the place in the record on appeal where said instruction may be found, together with the objection thereto."). The Farrises are unable to comply with this rule because they failed to object to the OWRB's portrayal in the jury instructions at any time prior to the submission of those instructions to the jury, or at all during the trial. They also failed to raise this issue as a concern in their motion for new trial.

¶27 Our own review of the instructions as a whole and the record on appeal indicates that both parties, in fact, referenced the OWRB and the permit hearings often throughout trial through their own witnesses and with their exhibits. For example, Instruction No. 9 contains a section of "Stipulated Facts" which provide that the OWRB "is an agency of the State of Oklahoma that issues use permits for water in Oklahoma." The stipulations further acknowledge the hearing before the OWRB and the agency's findings of fact and conclusions of law, which were not appealed by either party. Instruction No. 9 also contains a section which highlights the Farrises' claims, one of which recognizes the importance of the OWRB findings by claiming that the "defendants have violated state law by holding water in excess of the amount allowed by the Oklahoma Water Resources Board and by not allowing sufficient water to flow downstream as required by the OWRB."

¶28 Additionally, the trial court gave Instruction No. 10 to the jury.Oklahoma Dept. of Securities ex rel. Faught v. Wilcox, 2011 OK 82267 P.3d 106

C. Remaining Contentions

¶29 COCA acknowledged additional claims of error by the Farrises with respect to rulings in limine by the trial court. For example, COCA held that the district court improperly found that the Farrises were required to provide their own water storage system before claiming any interference with their water rights as a result of the Masqueliers' dam. To the contrary, there is nothing in the record that would indicate the trial court made such a factual statement to the jury and the Farrises proffer no support thereof. This claimed error instead arises out of a motion in limine ruling wherein the trial court overruled the Farrises motion to exclude certain evidence pertaining to the OWRB's condition that the Farrises build a storage system before attempting to assert a claim of interference against the Masqueliers.

¶30 A ruling on a motion in limine is preliminary and advisory in nature. A party aggrieved by such a ruling must raise the issue when it arises during trial, "either by objecting when the challenged evidence is admitted or by making an offer of proof if the question involves excluded matter." Johnson v. Ford Motor Co., 2002 OK 2445 P.3d 86Middlebrook v. Imler, Tenny & Kugler M.D.'s, Inc., 1985 OK 66713 P.2d 572

¶31 Here, the Farrises cite to no objection in the record or an offer proof regarding the subject of this limine ruling at trial. They further failed to raise it in their motion for new trial. The trial court's alleged error in the pretrial limine ruling is, accordingly, not preserved for appeal.

¶32 Finally, the record is devoid of any objections made on the record at trial by the Farrises with respect to any other rulings on motions in limine or any other allegations of error at trial. As such, any remaining claims of error are likewise waived for failure to preserve the alleged errors for appeal. Johnson v. Ford Motor Co., supra, ¶ 16, 45 P.3d at 92-93.

II. Masqueliers' Counter-Appeal for Attorney Fees.

¶33 The Masqueliers counter-appealed for an award of attorney fees claiming their entitlement to such fees pursuant to 12 O.S.2011, § 94012 O.S.2011, § 94012 O.S.2011, § 940

¶34 The Farrises argue that they never alleged that their real property was physically damaged but instead that the Masqueliers deprived the Farrises of their right to access water in the Creek. They claim that the lack of natural streamflow prohibited them from being able to adequately water their livestock or irrigate their crops. This, they allege, is insufficient to trigger an award of fees under § 940.

¶35 The Masqueliers point out numerous references within the Farrises' trial pleadings wherein they assert property damages caused by the alleged impairment of water from the Creek. Specifically, the Farrises claimed "loss or injury to cattle," "loss or injury to fruit trees and row crop vegetables," "loss or injury to hunting operations," and "loss of irrigation capabilities." They also alleged the inability to water caused weeds to grow on their property which led to their cattle's inability to feed on necessary grasses. Finally, the Farrises claimed a diminution in their property's value caused by the impairment of the Creek's natural streamflow.

¶36 The Farrises sought, and were granted, a jury instruction on the matter of their damages to real property.

CONCLUSION

¶37 The trial court properly instructed the jury in this case and the jury verdict should not be overturned on appeal. There was no misstatement of the law by the trial court which would constitute fundamental error. We find the Farrises failed to properly preserve their objections to the alleged errors but, even if they had, we do not find under the lesser standard that the jurors were misled in any way nor would they have likely reached a different result than they would have reached had the Farrises' allegations of error been resolved in their favor. The jury evaluated the facts, evidence, and law in finding for the Masqueliers on all claims and their verdict should stand. Accordingly, we vacate the COCA opinion and affirm the trial court's judgment on the motion for new trial. We reverse the trial court's denial of attorney fees and remand for a determination of an award of reasonable fees. The jury's verdict is hereby reinstated.

CERTIORARI GRANTED PREVIOUSLY; THE OPINION OF THE 
COURT OF CIVIL APPEALS IS VACATED; THE TRIAL COURT'S 
JUDGMENT IS AFFIRMED IN PART, REVERSED IN PART AND
REMANDED FOR FURTHER PROCEEDINGS.

CONCUR: DARBY, C.J., KANE, V.C.J., WINCHESTER, EDMONDSON, COMBS, GURICH, KUEHN, JJ.

CONCUR IN PART, DISSENT IN PART: ROWE, J. (by separate writing)

NOT PARTICIPATING: KAUGER, J.

FOOTNOTES

48. IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Application No. 2014-007 in the name of Preston W. Masquelier and Candy Masquelier shall be and the same is hereby approved subject to the terms which follow. A regular permit shall be issued to authorize use of a total of 148 acre-feet of stream water per year at a maximum rate of withdrawal of 400 gpm from two points of diversion on a private pond located in the NE SW SW of Section 1, T15N, R14WIM, Custer County, which pond is located on an unnamed tributary of the upper Canadian River, referenced by the parties as "Crow Springs Creek", of which 45 acre-feet is for irrigation of pasture grass, wheat, soybeans, cotton, winter wheat, milo, peanuts, alfalfa, and Bermuda grass, and 103 acre-feet is for drilling and primary completion of oil and gas wells within Stream System 2-6-3. The area of use is 286.5 acres in the W/2 of Section 1, T15N, R14WIM, Custer County as more specifically described in the application.

49. IT IS FURTHER ORDERED that in addition to any other general stream water permit conditions which are applicable but not specifically identified herein, the permit shall state the following specific conditions:

a. The use of stream water under this permit shall not interfere with domestic or existing appropriative uses. If any such interference is proven after the permit is issued, then this permit may be modified, suspended or revoked as appropriate in order to abate and prevent such interference.

b. The applicants shall provide a continuous, minimum flow of stream water past the dam by means of a method certified by a professional engineer and documented and approved by Board staff prior to any diversion of water pursuant to this permit, which method provides a minimum flow rate of 12.2 gpm past the dam. The required minimum flow shall be continuously provided unless the Applicants demonstrate to the satisfaction of Board staff that the amount of water stored in the pond is below the applicants' two (2) year supply of domestic use recognized in 82 O.S. § 105.2

c. Applicants shall install and at all times maintain in operable condition the Board required valve on the siphon.

d. Pursuant to OAC 785:20-7-2(12), within 30 days of the date of this Order, and prior to authorized diversion, the applicants shall provide to Board staff a Right of Access satisfactory to Board staff providing applicant the right to cross with applicant's water lines the NW/4 of Section 1, T15N, R14WIM, Custer County.

e. Under OAC 785:20-7-2(13), because applicants lease the NW/4 of Section 1, T15N, R14WIM, Custer County where the water is authorized to be used for irrigation, the permit shall expire upon termination of the lease or renewals thereof unless the permit is transferred to the owner of the land within thirty (30) days of the effective date of such renewal.

Defendant claims:

(3) There is no merit or legal support for Plaintiffs' negligence, negligence per se, unjust enrichment, injunctive or nuisance claims. Masqueliers deny that they interfered with their water use and that the natural flow of that which enters the Masqueliers land is exiting it. Defendant claims that Plaintiffs have failed to ever produce any actual evidence that the water that enters Defendants' land is not exiting it, particularly since the stream itself begins on the Masqueliers' property. Defendant Masqueliers claim that Plaintiffs allege that the mere fact that the dam was built is evidence of interference with the natural flow.

(4) Likewise, Plaintiffs cannot prove any interference with or injury to their appropriative (permit) uses because they have never attempted to irrigate. Defendant Masqueliers allege that plaintiffs cannot prove injury unless plaintiff's actually have a need for it (to irrigate crops). Defendants Masqueliers allege that Plaintiffs have no evidence that their appropriative uses were actually interfered with, because they have never attempted to capture and use the water. Defendant Masqueliers allege that Plaintiffs should first show that they have stored the stream water and use it before any determination about interference can occur. Defendant Masquliers [sic] allege that since Plaintiffs have not begun any of the works required by the OWRB Order granting their stream water permit, Plaintiffs have not proven a need for water required for their appropriative uses and that they have sustained no harm.

A permit was granted by Oklahoma Water Resources Board (OWRB). Conditions were imposed by the OWRB. This case is a civil action by Plaintiff alleging nuisance, interference, negligence and unjust enrichment and the law allows this jury to decide if Plaintiff has been injured in these ways even though the Defendants, Masquelier, have a permit to build the dam and withdraw water for sale. The law allows the Plaintiff to make these claims and attempt to prove those claims even though the activity that Plaintiffs alleged caused the injury is done under a permit issued by the OWRB.

Plaintiffs allege two things: First, they alleged that defendants, Masquelier, have not complied with conditions imposed on the permit by the OWRB and they are injured by the failure. Second, Plaintiffs allege that the activity injures them in the stated ways even if Defendants, Masquelier, are complying with the conditions imposed on them.

The law allows the jury to decide if Plaintiffs have been injured in any of these ways under either theory of recovery.

Negligence per se -- Violation of Statute, Regulation, or Ordinance

In addition to the duty to exercise ordinary care there are also duties imposed by law. If you find that any of the Defendants violated any one of the following statutes or regulations and the violation was the direct cause of an injury to any of the Plaintiffs, then such violation in and of itself makes the Defendant or Defendants violating any one of the following statutes or regulations negligent, per se. The following statutes and regulations have been in force and effect in Oklahoma since before 2014 to the present:

82 O.S. § 105.5

60 O.S. § 60

OAC 785:25-3-7 (A)(1) which states: All dams subject to the Oklahoma Water Resources Board's jurisdiction shall have at least one outlet conduit of sufficient capacity to prevent interference with natural streamflow and injury of downstream appropriators and domestic users.

Boyles v. Okla. Nat. Gas Co., 1980 OK 163

¶14, 619 P.2d 613

See, supra, footnote 6.

Damages to Real Property

Real property consists of land. Damage to real property can be either temporary or permanent or both. If you find for Plaintiff JoLana Farris and/or Plaintiff Mark Farris on their claims of negligence or nuisance, you may award damages for all temporary and permanent injuries to the real property owned by Plaintiff Mark Farris and JoLana Farris. Temporary damages are those that can be remedied by a reasonable expenditure of money within a reasonable period of time. Damages are permanent if the injuries cannot be remedied by an expenditure of money or labor.

The measure of damages for permanent injury to real property is the difference between the reasonable market value of the land immediately before the injuries and the reasonable market value of the land immediately after the injuries--in other words, the amount of the lost value of the property resulting from the injurious conduct.

For temporary injuries to real property, damages are measured by the cost of restoring the land to its former condition, with compensation for the loss of use of it, if this altogether is less than the diminution in value with the injuries left standing. However, for temporary nuisances, damages are limited to those sustained at the time of the filing of the action. (Authority omitted)

 

 

ROWE, J., concurring in part, dissenting in part:

¶1 I concur in the Court's judgment vacating COCA's opinion and affirming the trial court's denial of Plaintiffs'/Appellants' motion for a new trial. I dissent, however, from the Court's finding that Defendants/Appellees are entitled to attorney fees.