Tom LEE, Appellee,

v.

VOLKSWAGEN OF AMERICA, INC., Volkswagen Werk, Inc., GMBH, a/k/a Volkswagen Werk Aktiengesellshift (A.G.), Appellants,

and

Marilyn W. Guffey, Appellee.

No. 51745.

Supreme Court of Oklahoma.

July 24, 1984.

Rehearing Denied Oct. 1, 1984.

John W. Norman and Thomas A. Wallace, Norman, Hays, McNulty & Mayfield and Larry A. Tawwater, Lampkin, Wolfe, McCaffrey & Tawwater, Oklahoma City, for appellee, Tom Lee.

Ronald D. Fulkerson, Fulkerson, Morris, Gray & Dolle, Oklahoma City, Rhodes,

Hieronymus, Jones, Tucker & Gable, Bert M. Jones, Richard M. Eldridge, Tulsa, Holloway, Dobson, Hudson & Bachman, Russell B. Holloway, Oklahoma City, Herzfeld & Rubin, P.C., Michael Hoenig, Myron Shapiro, New York City, for appellants.

McKinney, Stringer & Webster, Oklahoma City, for appellee, Marilyn V. Guffey.

PER CURIAM:

## I.

This suit arises from a collision between the station wagon driven by Marilyn Guffey and the 1964 Volkswagen "Beetle" driven by the plaintiff, Tom Lee.

Plaintiff's car was traveling north at approximately 15 miles per hour when it was struck on the right front side by Guffey's station wagon traveling west at a speed of approximately 35 miles per hour. Immediately prior to the impact, Guffey applied her brakes, causing the front of the station wagon to dip and strike plaintiff's car below its center of gravity, causing it to roll or tip to its right side. The much greater speed and weight of Guffey's car drove the plaintiff's car into a counter-clockwise rotation which resulted in the vehicles "side-slapping." At the end of the side-slap, the vehicles parted, with the Volkswagen being knocked forty feet west.

At a point somewhere between the first impact of the vehicles and the Volkswagen's final resting place, the right door came open and plaintiff and his brother, who was a passenger in the car, were ejected onto the street. As a result of the accident, the plaintiff sustained a cervical fracture, rendering him quadriplegic.

Plaintiff brought suit against Guffey on the basis of a traditional negligence theory. Plaintiff brought suit against Volkswagen on the basis of "manufacturers' products liability." The application of the latter theory was based on the contention that a defective door latch caused plaintiff's cervical fracture by allowing the door to come open, thus causing plaintiff to be thrown from the car.

The jury, in trial at the district court level, found in favor of plaintiff and awarded a judgment of 1.8 million dollars, plus interest and costs against both defendants.

Defendants Volkswagen of America, Inc. and Volkswagen Werk, Inc., GMBH (collectively referred to as Volkswagen) appeal.

## II.

### A.

The theory of manufacturers' products liability, as adopted in *Kirkland v. General Motors*, Okl., 521 P.2d 1353 (1974), provides the framework for this case.

Benita Kirkland brought action against the manufacturer of the automobile which she had been driving for injuries sustained in a collision which allegedly occurred when the driver's seat collapsed and she fell backwards. The district court ruled in favor of the defendant. This Court, while affirming the trial court's decision, also outlined the conceptual guides that govern a case when manufacturers' products liability is at issue.

*Kirkland* held that one who sells any product in a defective condition, that is unreasonably dangerous to the user or consumer, is strictly liable for the physical harm to person or property caused by the defect. This liability is not predicated on either a negligence or warranty basis. Plaintiffs utilizing this theory must prove that the product was the cause of the injury, that the defect existed in the product at the time it left the control of the defendant and that the defect made the product unreasonably dangerous as defined by ordinary consumer expectations.

In *Kirkland* we also addressed the level of proof necessary to fulfill plaintiff's burdens. Circumstantial evidence, coupled with the proper inferences drawn from it, is clearly an acceptable minimal basis. Ac-

tual or absolute proof is not required because this type of proof may be within the possession or peculiar knowledge of the defendant.

### B.

Our first task is to determine if the *Kirkland* mode of analysis can be applied to the facts of the immediate case. The factual difference between the two cases is commonly referred to by drawing a distinction between injuries received in the "first collision or impact" and "injuries received in the second collision or impact." Products are said to be involved in "first impact injuries" when the product causes the impact to occur. Products are involved in "second impact injuries" when they operate as a causative agent after the original impact. For instance, Ms. Kirkland argued that the defective seat caused the accident and resultant injuries, while in this case Mr. Lee contends that the door latch caused the contact with the street and the resultant cervical fracture. The contact with the street could not have occurred without the initial impact between Ms. Guffey's station wagon and Mr. Lee's Volkswagen. This distinction is important because we have not previously decided a case involving "injuries from second impact."

Early in the development of the "second impact injury" doctrine, there was considerable discussion as to whether manufacturers had a duty to consider "collision impact" when designing an automobile.

■ *Larsen v. General Motors*, 391 F.2d 495 (8th Cir.1968), involved this issue, holding that manufacturers have a duty to consider the environment in which the product will be used. We agree with the *Larsen* holding that the manufacturer's liability for injuries proximately caused by latent defects should not be limited to collisions in which the defect caused the accident, but should extend to situations in which the defect caused injuries over and above that which would have occurred from the accident, but for the defective design.

■ "Second impact" cases present no unique problems in reference to the actual defect. Plaintiff has the same burden as in other products cases as to whether the product was in a defective condition that was unreasonably dangerous as defined by ordinary consumer expectations when it left the control of the manufacturer.

■ "Second impact" cases do require a slightly different perspective when discussing the plaintiff's causation burden. A review of the case law of other jurisdictions reveals that courts speak of the manufacturer's liability in second impact cases in terms of "enhancement" or "aggravation" of injuries. In other words, the manufacturer is liable for damages only if the plaintiff can prove that he suffered injuries as a result of the latent defect or "second impact" in addition to those suffered as a result of the accident or "first impact." Further, the manufacturer is liable for damages only for enhanced injuries attributable to the second impact, i.e., only for injuries resulting from the latent defect.

This "aggravation" or "enhancement" can occur in two ways: A plaintiff might suffer an increase in the severity of the injury as a result of the "second impact," e.g., a worsening of a back injury suffered in the first collision, or a plaintiff might suffer an entirely new injury as a result of the "second impact," e.g., a broken leg in addition to a broken arm. In either situation, the causation burden is the same as in all products cases. Plaintiff must offer sufficient proof to convince the jury that the defect was responsible for a new injury or enhancement of an injury sustained as a result of the first impact. Thus "aggravation" or "enhancement" are labels applied to second impact injuries to avoid confusion with injuries caused by the "first impact." However, the problem is that, except for the instance in which the injuries caused by the design defect are clearly distinguisha-

ble from those caused by the initial collision (e.g., burn injuries from the explosion of a defectively designed gas tank, as in *Turcotte v. Ford Motor Co.*, 494 F.2d 173 (1st Cir.1974)), the evidence will necessarily include a determination of what injuries might have happened in the collision absent the defect. Not only must the jury attempt to determine what injuries plaintiff would have suffered absent the design defect, i.e., in this case, if the door had not opened, but it must also determine what enhanced injuries plaintiff suffered by reason of the door opening. In this case, plaintiff claimed damages for one indivisible injury, a cervical fracture rendering him quadriplegic.

## C.

■ We now turn to an evaluation of defendants' specific claim. Volkswagen contends that this case should not have been presented to the jury because there was insufficient evidence to meet the plaintiff's burden of proof in terms of causation. The trial court denied the motion for a directed verdict, and it is that decision we now consider.

The necessary assessment requires a standard to determine the sufficiency of the evidence. It is this standard-making process that has provided a point of controversy in the reported cases involving "second impact injuries."

One group of decisions requires the plaintiff to precisely and exactly prove those injuries that are attributable to the accident and those that are attributable to the alleged design defect. The case of *Huddell v. Levin,* 537 F.2d 726 (3rd Cir. 1976) is representative of this approach. In *Huddell,* plaintiff's decedent's head struck the head restraint after his car was hit in the rear. Plaintiff claimed that the head restraint had an unusually sharp edge, which caused decedent's death when it struck him on the rear of the head. At trial, plaintiff offered proof that the head restraint was defective and that the defect was a proximate cause of death. The court

ruled that this proof was insufficient to make out a prima facie claim under the "second impact" theory. The court indicated that its test would require plaintiff to prove that the design was defective, the existence of a practical alternative design, what injuries would have resulted with the alternative design, and a method to evaluate the extent of the enhanced injury.

Other cases have ruled that a plaintiff only has to offer "some evidence of enhancement" to frame a jury issue. In case of *Lahocki v. Contee Sand & Gravel Co.,* 41 Md.App. 579, 398 A.2d 490 (1979), plaintiff Lahocki was a passenger in a General Motors van. The van was proceeding between 40 and 55 miles per hour when it struck heavy timber barricades placed there by Contee. The van went up into the air and flipped. It came to rest upside down, separated from its roof panel which lay nearby. Although the driver was still inside and relatively uninjured, passenger Lahocki lay with his back broken on the road some distance from both van and roof panel. Based upon expert evidence, Mr. Lahocki claimed that the roof panel came off because it was inadequately welded, and that his broken back was the direct result of having been thrown out of the vehicle through the open roof. The Maryland Court of Appeals, when discussing the sufficiency of plaintiff's proof regarding possible injuries in the absence of the defect, ruled that "some" evidence of a causal connection was necessary and if that evidence was provided it would be sufficient to present the case to a jury.

These decisions are not as conflicting as they appear to be at first glance. Both decisions agree that the manufacturer is liable only for the enhanced injuries, and the plaintiff must prove causation between the alleged defect and the injuries. The difference is the degree of proof that is required. The standard represented by *Huddell* requires a precise, certain, almost mathematical, level of proof, while the "some evidence" standard of Lahocki

presents disturbing visions of unreasonable jury speculation.

We expressly reject the *Huddell* standard for several reasons. To require that exacting level of proof would make reasoning impossible. The goal of limiting a manufacturer's liability to a manageable burden can be accomplished without mandating an almost rigid level of proof. There are other standards that can be used without making insurers out of the manufacturers. There is no justifiable reason for placing this type of burden on one area of products liability and not on the other.

In addition, application of the *Huddell* standard might impair the promotion of "safer products" design by manufacturers, which this Court expressly recognized as desirable in *Kirkland,* by weakening the deterrent value of products action.

In rejecting the stricter standard of proof, we do not intend to travel to the other extreme. We find that the proof standards outlined in *Kirkland* constitute a reasonable compromise. Plaintiffs in first impact cases under the manufacturers' products liability theory must prove their case by a preponderance of evidence on the prima facie issues to avoid a directed verdict. We therefore hold that there is nothing about "second impact cases" that would justify changing that standard. Thus in "second impact cases" the plaintiff must prove by a preponderance of the evidence that the product was in a defective condition that was unreasonably dangerous as defined by ordinary consumer expectations when it left the control of the manufacturer and must prove after the original impact such defect caused or enhanced his injuries. Further, while we reject the exact levels of harm approach as espoused in the *Huddell* case, the plaintiff should be required to prove by a preponderance of the evidence the extent of the enhanced injuries resulting from the defect. The manufacturer of course will only be liable for the injuries resulting from the latent defect which was caused or enhanced by such defect.

## III.

██ What we have heretofore said applies to "second impact" cases where the injuries sustained are separate and divisible. In such cases, the burden of proof remains solely upon the plaintiff, including the burden of proving "enhancement," i.e., the plaintiff must prove which of the several injuries are attributable to the manufacturer's defective product and the degree of "enhancement" occasioned by the product as distinguished from the injuries flowing from the third party's acts of negligence.

But a different rule applies where the principal injury complained of is single and indivisible (such as death or, as here, quadriplegia) and therefore are incapable of apportionment. In other words, there can be no "enhancement" in single indivisible injury cases.

Having established the overall burden of proof imposed upon the plaintiff in "second impact" cases, we therefore next address the succeeding consequential problem of who has the burden of going forward with the evidence where the principal injury complained of is single and indivisible such as in the case before us. Here again we reject the repressive rule of *Huddell* which requires a plaintiff to prove with specificity that the single injury was caused by the specific defects in the product to make a submissible case. The *Huddell* rule too readily permits the manufacturer to escape what otherwise would be its liability by the fortuitous commingling of a third party's negligence into the causal chain. The relation of the manufacturer and the third party is not that of concurrent joint tortfeasors in the strict sense (manufacturer is still liable only for the "enhancement" of the injuries flowing from the defect in the product if established by proof). But they are concurrent tortfeasors in the sense that their independent acts combine to cause a single injury.

In the case of *Richardson v. Volkswagenwerke, A.G.,* 552 F.Supp. 73 (D.C., W.D.Mo.1982), the Court observed:

"Other jurisdictions have followed orthodox tort principles set forth in *Restatement (Second) of Torts* §§ 433, 433A and 433B (1965) and hold that a plaintiff need not prove the nature and extent of the enhanced injuries but makes a submissible case by offering enough evidence of enhancement to present a jury issue. Defendants are deemed concurrent tortfeasors because their independent acts combined to cause a single injury. Under this theory, plaintiff has the burden of presenting sufficient evidence to prove to the jury that each defendant's act (the original tortfeasor's negligence and the manufacturer's defective product) was a *substantial* factor in producing the plaintiff's injuries. Should the plaintiff's injuries be indivisible, the defendants are held jointly and severally liable as concurrent tortfeasors for plaintiff's total damage. If reasonable minds could differ on whether the plaintiff's injuries are divisible, the trier of fact determines whether the injury can be reasonably apportioned among the defendants and the extent of each defendant's liability. *Mitchell v. Volkswagenwerk, A.G.* 669 F.2d 1199 (8th Cir. Feb. 8, 1982); *Fietzer v. Ford Motor Co.,* 590 F.2d 215, 218 (7th Cir.1978); *Fox v. Ford Motor Co.,* 575 F.2d 774, 787–788 (10th Cir.1978); *Lahocki v. Contee Sand & Gravel Co., Inc.,* 41 Md.App. 579, 398 A.2d 490, 501 (1979)." (Emphasis added.)

We subscribe to the above-quoted language, except that we are of the opinion that the following language more correctly reflects our determination of the law: Under this theory, plaintiff has the burden of presenting sufficient evidence to prove to the jury that each defendant's act was a *contributing* (not *substantial*) factor in producing the plaintiff's injuries.

█ In our opinion, Lee did offer sufficient evidence to meet his general burden of proof and to withstand a motion for directed verdict. Plaintiff offered testimony that his cervical fracture was caused by the defective door latch's failure to operate and his subsequent contact with the road. The plaintiff offered medical testimony that showed that the plaintiff's injuries more likely than not occurred as a result of the collision with the ground. Testimony also included expert witnesses who testified there were other door latches available that operated in a safer manner.

Volkswagen, of course, offered testimony to dispute these conclusions, but it is that very dispute that required such factual issues to be submitted to the jury; and the weight to be accorded testimony was within the province of the jury to decide.

Having thus met the overall burden of proof imposed upon him, and the principal injury complained of being single and indivisible, the burden of proving that plaintiff's single injury was solely the result of Guffey's negligence and not attributable to the manufacturer's defective product then shifted to Volkswagen. Failure of the trial court to instruct that the burden shifted in this case to Volkswagen certainly could not be argued by the latter as a basis of error.

While the verdict of the jury was in parts confusing and in isolated parts even possibly inconsistent by reason of the trial court's failure to instruct in accordance with the views herein expressed, two conclusions are inescapable: The jury found in favor of the plaintiff and awarded a judgment of 1.8 million dollars, plus interest and costs against both defendants, and thereby determined that the independent acts of each of the defendants were a contributing factor in producing the plaintiff's single and indivisible injury. Volkswagen, having failed in its burden to prove that the injury was either the result of Guffey's negligence or only in part attributable to the manufacturer's defective product, the verdict as rendered must stand.

In *Fields v. Volkswagen of America, Inc.,* Okl., 555 P.2d 48, 57, (1976) we said: "A judgment will not be disturbed because of allegedly erroneous instructions, unless it appears reasonably certain that the jury

was misled thereby." And in *Missouri-Kansas-Texas Railroad Co. v. Harper*, Okl., 468 P.2d 1014, 1020, (1970) and cases therein cited, we held: "The salient test of reversible error in instructions is whether the jury was misled to the extent of rendering a different verdict than it would have rendered, if the alleged errors had not occurred." Accord, *Johnson v. Wade*, Okl., 642 P.2d 255, 260–261, (1982).

## IV.

We now address the specific objections Volkswagen has raised to various procedures and decisions of the trial judge.

## A.

■ The first specific error argued is that the jury was allowed to view a film subtitled "A Day in the Life of Tom Lee." This film showed a sample of Tom's daily activities after the accident. The film is characterized by Volkswagen as extremely prejudicial without having sufficient probative value. We find just the opposite. The film allowed the jury to gauge the damages suffered by Tom Lee. After examining the film, we do not find it prejudicial.

## B.

■ Volkswagen next presents several arguments regarding the trial judge's decisions on different bits of testimony and evidence offered by both sides. These objections include the introduction of evidence allegedly secured after discovery in violation of the judge's pre-trial order, unqualified witnesses being used as experts, failure to admit results of tests conducted by Volkswagen, use of industry standards and models from different cars than the type involved in this accident, the use of testimony without a proper foundation and the refusal to allow specific bits of impeachment testimony.

These arguments are all combined because the determinative issue is whether the trial judge abused his discretion in making these rulings and whether that abuse materially affected the substantial rights of the defendants. *Settle v. Crawford*, 155 Okl. 291, 9 P.2d 38 (1932); *Empire Oil and Refining Company v. Fields*, 188 Okl. 666, 112 P.2d 395 (1940). There is no conflict between the parties as to what the law is in each of these segments; rather, the issue is joined at the level of the trial judge's application.

We have examined the record, particularly those portions cited by the parties. This examination revealed no abuse of the trial court's discretion. The rulings of the judge were well within the perimeters of his decision-making role. Accordingly, any error is so slight as to constitute harmless error and thus cannot be used to justify reversal.

## C.

■ The next assignment of error involves the use of depositions during the trial. Volkswagen is concerned over the use of depositions without the witnesses' actual appearance in court. Volkswagen contends that their technique during the deposition stage was designed solely to elicit information and if they had been aware that the experts were not going to be available during the trial, they would have used a different tactic. While it may be true that Volkswagen would have changed tactics, there is no doubt that there is statutory authority for the procedure used. Title 12 O.S. 1981, § 433 lists the circumstances when a deposition may be used in lieu of the witness's appearance. This statute indicates that when a witness does not reside in the county where the action is proceeding, his or her deposition may be used. The record reveals that the witnesses all fall under this rule.

## D.

■ Volkswagen's next complaint is that the trial judge failed to tell the jury to

disregard prejudicial hearsay. The plaintiff's girl friend testified that after the accident the plaintiff told her that he felt like committing suicide. Volkswagen contends that his statement is inadmissible hearsay. Oklahoma law recognizes exceptions to the general prohibition against hearsay. Since the trial in this instance was before the enactment of the Oklahoma Evidence Code, Lee's statement may be classified as falling under the *res gestae* exception referred to in *Gulf Oil Corporation v. Harris*, Okl., 425 P.2d 957 (1967). The suicidal statement was made by plaintiff in response to his finding out the extent of his injuries as a consequence of this accident. Such statements are clearly relevant and material in allowing the jury to assess damages.

### E.

■ Finally, Volkswagen contends that the trial court erred in refusing to order a mistrial on the basis of comments made by co-defendant Guffey's counsel regarding insurance coverage. Counsel made a reference to "Volkswagen Insurance Company" when the correct reference would have been to "Volkswagen Motor Company." Although the general rule that information conveyed to a jury that a judgment rendered in favor of plaintiff would ultimately be paid by the defendant's insurance company instead of defendant personally is held to be prejudicial error, we find that this wording is too remote and not sufficient to advise the jury that the defendant carried insurance which would pay a judgment. See *Fixico v. Harmon*, 180 Okl. 412, 70 P.2d 114 (1937).

Having found no reversible error, the judgment of the trial court is affirmed.

AFFIRMED.

LAVENDER, DOOLIN, HARGRAVE and OPALA, JJ., and WILSON, (Chas.), Sp.J., concur.

SIMMS, V.C.J., concurs in result.

BARNES, C.J., WILSON (Alma) and KAUGER, JJ., certified their disqualification.

(The Honorable Dwain D. BOX and the Honorable Charles M. WILSON appointed to serve instead of BARNES, C.J., and WILSON (Alma), J.).