2002 OK 24

**Ricky JOHNSON, Plaintiff/Appellee,**

v.

**FORD MOTOR COMPANY,
Defendant/Appellant.**

No. 95,873.

Supreme Court of Oklahoma.

April 2, 2002.

James D. Sill, Mary A. Black, James C. Winterringer, Shawnee, OK, Richard L. Denney, Lydia J. Barrett, Norman, Oklahoma, Brent D. Berry, Oklahoma City, OK, for Plaintiff/Appellee.

A. Thomas Elder, Jr., Curtis L. Smith, Oklahoma City, OK, George E. Wolf, Paul A. Williams, Kansas City, MO, Craig A. Morgan, Austin, TX, for Appellant.

KAUGER, J.

¶1 This cause concerns manufacturers' products liability as it relates to automobile accidents in which the alleged defective product did not cause the accident to occur, but allegedly caused injuries after the initial impact. This theory of recovery is commonly known as the "second impact injury" or "second collision doctrine".[1] Three issues are addressed:[2] 1) whether the trial court's omission of a jury instruction regarding enhanced injuries resulting from the alleged defect is grounds for reversal; 2) whether the evidence was sufficient to support the jury verdict; and 3) whether the

---

1. *Lee v. Volkswagen of America, Inc.,* 1984 OK 48, ¶11, 688 P.2d 1283. The term "second collision" usually refers to the collision between a passenger and an interior part of the vehicle following an impact or collision. *Caiazzo v. Volkswagenwerk,* 647 F.2d 241, n. 2 (2nd Cir. 1981).

2. Ford asserts nine separate points of error in its petition in error. Nevertheless, it succinctly briefed the three issues which are addressed. To the extent that each of its allegations of error were not contained within the arguments in its brief, they are waived. Parties waive issues by failing to brief them. *Burrows v. Burrows,* 1994 OK 129, ¶3, 886 P.2d 984; *American First Abstract Co. v. Western Info. Syst., Inc.,* 1987 OK 24, ¶11, 735 P.2d 1187.

calculation of pre-judgment interest should have commenced from the date the amended petition was filed and the defendant was served or from the date the cause was filed. Under the facts presented, we hold that: 1) the omission of the manufacturer's requested instruction relating to enhanced injuries does not require reversal; 2) the plaintiff's evidence that the seat belt and restraint system caused his permanent brain injury was sufficient to support the jury verdict; and 3) pre-judgment interest commenced from the date the cause was filed.

## FACTS

¶2 On June 16, 1997, the appellee, nineteen-year-old Ricky Johnson (Johnson) apparently lost control of his 1988 Ford Ranger pickup truck while driving on a country road near his home in Tecumseh, Oklahoma. The pickup went off of the right side of the road, swerved to the left side of the road, flew off the road and the edge of a creek bank, smashed into an embankment, and landed at the bottom of the creek bed on its passenger's side. Johnson has no recollection of the accident.

¶3 During the accident, Johnson's seat belt webbing tore apart at the latch plate and he landed against the passenger-side door. Johnson sustained a broken pelvis, broken left arm, broken bone in his spine, ruptured bladder and a severe head injury with bruising and hemorrhaging in the brain. As a result of the brain injury, Johnson has permanent physical impairment and a reduction in his mental functioning.

¶4 On August 6, 1998, Johnson's parents initiated a suit[3] against the manufacturer of the pickup, Ford Motor Company (Ford).[4] They sought to recover compensatory and punitive damages resulting from Johnson's injuries. They alleged that: 1) Johnson suffered severe and disabling injuries because his seat belt failed during the accident; 2) the pickup's seat belt system was defective and unreasonably dangerous; and 3) Ford wilfully disregarded public safety in its design and manufacture of the vehicle, and that it was grossly negligent in its testing and warnings to consumers.[5]

¶5 Ford defended, denying that the seat belt was defective, or that it was the cause of Johnson's injuries. A jury returned a verdict in favor of Johnson for $5,000,000.00. On October 6, 2000, the trial court entered a journal entry of judgment on the jury verdict and awarded pre-judgment interest.[6] On October 16, 2000, Ford filed a motion for judgment notwithstanding the verdict/motion for new trial, arguing that: 1) the trial court improperly refused to allow its requested jury instructions regarding enhanced injuries allegedly caused by the defect; 2) Johnson's evidence was insufficient to support the jury verdict; and 3) the calculation of pre-judgment interest should not have begun until the amended petition was filed and Ford was served. The trial court overruled both of Ford's motions on January 12, 2001. Ford appealed on February 16, 2001, and filed a motion for oral argument and a motion to retain the cause in this Court. On September 21, 2001, we retained the cause and briefing was completed on October 22, 2001.

---

3. Although Johnson's parents initiated the lawsuit as parents and next friend of Ricky Johnson, the trial court subsequently aligned the parties to leave the only plaintiff, Ricky Johnson. It determined that, although Johnson was incompetent when the lawsuit was filed because of his comatose condition, he was no longer incompetent.

4. Johnson's parents also named Townsend Motors, L.L.C., as a distributor of the vehicle and Breed Technologies, Allied Signal, Inc., and TRW Safety Systems, Inc. as the manufacturers of the seat belt which was placed in the vehicle. However, prior to trial, claims against Townsend, Breed, and Allied were dismissed and the claim against TRW was apparently settled prior to the jury's verdict.

5. The Johnsons also asserted a negligence claim against Ford alleging negligent design and manufacture of the vehicle and failure to use due care in testing the vehicle and its restraint system. However, the claim was subsequently dismissed.

6. The jury rendered a verdict for $5,000,000.00 and the trial court, giving credit of $150,000.00 for a prior settlement, entered judgment against Ford in the amount of $4,850,000.00, plus pre-judgment interest of $893,654.00. The court also awarded post-judgement interest to accrue from the date of the verdict until paid.

¶ 6 I.

## UNDER THE FACTS PRESENTED, THE OMISSION OF THE MANUFACTURER'S REQUESTED INSTRUCTION RELATING TO ENHANCED INJURIES DOES NOT REQUIRE REVERSAL.

¶ 7 This cause involves a single-car accident, and it is undisputed that the failure of the seat belt and restraint system were not the cause of the accident. Ford asserts that the trial court committed reversible error when it neglected to specifically instruct the jury that if it determined that the seat belt and restraint system were defective, then Johnson could only recover damages for the portions of his injury which were enhanced because the seat belt separated.[7]

■ ¶ 8 Johnson argues that: 1) the evidence presented at trial showed that, regardless of why Johnson's vehicle left the road, Johnson would not have suffered any permanent disabling brain injury if the defective seat belt had not failed; 2) Ford's proposed jury instruction was unnecessary and it would have mislead the jury because Johnson's brain damage was not merely "enhanced" by the defect, it was caused by the defect; and 3) the jury instructions which were given properly reflected Oklahoma products liability law.[8] Both parties rely upon *Lee v. Volkswagen of America, Inc.,* 1984 OK 48, 688 P.2d 1283 in support of their arguments.

■ ¶ 9 In giving instructions, the trial court is not required to frame issues, but it must state the law correctly.[9] Instructions are explanations of the law of a case which enable a jury to understand its duty and to arrive at a correct conclusion.[10] The instructions need not be ideal, but they must reflect

---

7. Ford's proposed jury instruction No. 22 provides:

    "If you determine the issue of liability in favor of Plaintiff and against Ford, you are instructed that Plaintiff can recover damages only for enhanced injuries attributable to the separation in the seat belt in the vehicle. In other words, you are instructed that Ford is not responsible for Ricky Johnson's injuries which would have resulted had the restraint system not separated."

8. On appeal, for the first time, Johnson complains that Ford did not properly preserve its objection to the omission of its proposed instruction number 22. After the jury retired to deliberate and the judge left the courtroom, both parties made a record of their objections to the jury instructions which were previously made in chambers prior to the giving of the instructions. Ford specifically objected to several instructions by number, but did not specifically refer to 22 by number. Ford also objected to the trial court's refusal to give any of its offered, but refused instructions. It also specifically referred to the omission of its proposed instruction number 22 in its motion for new trial and Johnson responded to Ford's arguments, but Johnson did not complain that Ford failed to preserve its objection to the omission of the jury instruction. Title 12 O.S.1991–578 sets forth the procedures for preserving objections for appeal. Section 578 provides:

    "A party excepting to the giving of instructions, or the refusal thereof, shall not be required to file a formal bill of exceptions; but it shall be sufficient to make objection thereto by dictating into the record in open court, out of the hearing of the jury, after the reading of all instructions, the number of the particular instruction that was requested, refused and is excepted to, or the number of the particular instruction given by the court that is excepted to. Provided, further, that the court shall furnish copies of the instructions to the plaintiff and defendant prior to the time said instructions are given by the court."

    We have previously recognized that the statutory requirements for preserving objections are mandatory. *Sellars v. McCullough,* 1989 OK 155, ¶ 6, 784 P.2d 1060. However, this cause is similar to *Cantrell v. Henthorn,* 1981 OK 15, ¶ 4, 624 P.2d 1056, in which the plaintiff had requested an instruction and the record reflected that the trial court understood that the plaintiff's counsel was objecting to the refusal even though plaintiff's counsel did not specifically dictate the objection into the record. We determined that the plaintiff's counsel clearly provided the trial court with an opportunity to correct any errors in the instructions, by providing requested instructions. While Ford may not have followed the precise procedure outlined in the statute, it did take adequate steps to apprise the court of its objections, giving the court ample opportunity to correct any mistakes. Consequently, the objections were properly preserved.

9. *Mosley v. Truckstops Corp. of America,* 1993 OK 79, ¶ 9, 891 P.2d 577; *Smicklas v. Spitz,* 1992 OK 145, ¶ 11, 846 P.2d 362; *Sellars v. McCullough,* see note 8, supra at ¶ 9.

10. *Mosley v. Truckstops Corp. of America,* see note 9, supra; *Smicklas v. Spitz,* see note 9, supra.

the Oklahoma law regarding the subject at issue.[11]

■ ¶ 10 Oklahoma adopted the theory of manufacturers' products liability in *Kirkland v. General Motors Corp.*, 1974 OK 52, 521 P.2d 1353. *Kirkland* teaches that one who sells a product in a defective condition, which is unreasonably dangerous to the user or consumer, is strictly liable for the physical harm to the person or property caused by the defect.[12] In *Kirkland*, we recognized that the burden of proof regarding causation was on the plaintiff and that a defense to a products liability action was that the defect did not cause the injury.

■ ¶ 11 Ten years later, in *Lee v. Volkswagen of America, Inc.*, 1984 OK 48, 688 P.2d 1283, we determined that a manufacturer is liable for the damages caused by a defect even if the defect may not have caused the accident—if the defect caused an injury or increased the severity of the injury sustained as a result of the first impact. In *Lee*, the plaintiff's car collided with another vehicle. After the initial impact, the plaintiff was thrown from the car and sustained a cervical fracture which rendered him quadriplegic. *Lee* brought a negligence action against the driver of the other vehicle and a manufacturers' products liability action against Volkswagen. The application of products liability was based on the contention that a defective door latch caused the plaintiff's cervical fracture by allowing the door to come open, causing the plaintiff to be thrown from the car. The jury rendered a verdict in favor of the plaintiff and against both defendants. Volkswagen appealed, arguing that the plaintiff did not offer sufficient proof of causation to submit the cause to the jury.

¶ 12 On appeal we affirmed, recognizing that a manufacturer should be liable for damages if the plaintiff can prove that he or she suffered injuries as a result of the defect or "second impact" in addition to those suffered as a result of the latent defect. Regarding the plaintiff's burden to prove causation, we held that: 1) the plaintiff was required to prove by a preponderance of the evidence that the product was in a defective condition which was unreasonably dangerous as defined by ordinary expectations when it left control of the manufacturer; and 2) after the original, initial impact the defect caused an injury or enhanced injuries.

¶ 13 Rather than require the plaintiff to prove precisely and exactly those injuries which are attributable to the accident and those which are attributable to the alleged design defect, we determined that: 1) the plaintiff should be required to prove by a preponderance of the evidence the extent of the enhanced injuries resulting from the defect; and ·2) the manufacturer is liable for damages only for injuries which resulted from the defect. We also noted that when injuries are sustained which are separate and divisible, the burden of proof remains on the plaintiff including the burden of proving "enhancement". In other words, the plaintiff must offer sufficient proof to prove which of the injuries are attributable to the manufacturer's defective product and the degree of "enhancement" occasioned by the product as distinguished from the injuries flowing from a third party's acts of negligence.

¶ 14 However, we also recognized that when the principal injury complained of is single and indivisible and therefore incapable of apportionment, there can be .no "enhancement." Accordingly, under this theory, the plaintiff has the burden of presenting sufficient evidence to prove to the jury that each defendant's act was a contributing factor in producing the plaintiff's injuries. Once the plaintiff meets this burden, the burden of proving that the plaintiff's injury was either

---

**11.** *Mosley v. Truckstops Corp. of America*, see note 9, supra; *Dutsch v. Sea Ray Boats, Inc.*, 1992 OK 155, ¶ 7, 845 P.2d 187.

**12.** To maintain a cause of action under manufacturers' products liability, the plaintiff must prove the product was the cause of the injury, that the product was defective when it left the control of the manufacturer, and that the defect made the product unreasonably dangerous to an extent

beyond which would be contemplated by the ordinary consumer who purchases it. *Hutchins v. Silicone Specialties, Inc.*, 1993 OK 70, ¶ 14, 881 P.2d 64; *Dutsch v. Sea Ray Boats, Inc.*, see note 11, supra at ¶ 11; *Woods v. Fruehauf Trailer Corp.*, 1988 OK 105, ¶ 10, 765 P.2d 770; *Kirkland v. General Motors Corp.*, 1974 OK 52, ¶ 29–31, 521 P.2d 1353.

the result of a third party's negligence or only in part attributable to the manufacturer's defective product shifts to the manufacturer. Under these circumstances, the relationship of the manufacturer and the third party are concurrent tortfeasors in the sense that their independent acts combine to cause a single injury. Should the plaintiff's injuries be indivisible, the defendants are held jointly and severally liable as concurrent tortfeasors for plaintiff's total damage. If reasonable minds could differ on whether the plaintiff's injuries are divisible, the trier of fact determines whether the injury can be reasonably apportioned among the defendants and the extent of each defendant's liability.

¶ 15 Although *Lee* involved a third party who caused the accident, we hold that its rationale applies regardless of whether the initial accident is caused by the plaintiff. In the present cause, Johnson sustained several injuries as a result of the accident. Nevertheless, a review of the record reveals that Johnson postulated his claim for damages on the principal brain injury, as a single and indivisible injury which rendered him permanently impaired.[13] Johnson did not assert that his brain damage was "enhanced" by the defect or made worse than it would have been absent the defect. Rather, Johnson's theory at trial was that if the seat belt and restraint system had not been defective and had not failed, he would not have suffered the serious, permanent injury at all. He offered testimony that the seat belt and restraint system were defective; that there were other safer seat belts and restraint systems available which operated in a safer manner; and that he would not have suffered the permanent brain damage if the seat belt had not failed. Ford offered contrary testimony to show that: 1) the seat belt was not defective; 2) because of the severity of the accident, the seat belt would have broken regardless of whether it was defective; and 3) Johnson would have suffered the same injuries even if the seat belt had not broken.

¶ 16 When reviewing jury instructions, the standard of review requires the consideration of the accuracy of the statement of law as well as the applicability of the instructions to the issues. The instructions are considered as a whole.[14] When the trial court submits a case to the jury under proper instructions on its fundamental issues and a judgment within the issues and supported by competent evidence is rendered in accord with the verdict, the judgment will not be reversed for refusal to give additional or more detailed instructions requested by the losing party, if it does not appear probable that the refusal has resulted in a miscarriage of justice or substantial violation of constitutional or statutory rights.[15] A judgment will not be disturbed because of allegedly erroneous instructions, unless it appears reasonably certain that the jury was misled thereby.[16] The test of reversible error in instructions is whether the jury was misled to the extent of rendering a different

---

**13.** A catastrophic brain injury like death or quadriplegia is considered indivisible by nature. See, e.g., *Stecher v. Ford Motor Co.*, 779 A.2d 491, 493 (Pa.Super.2001).

**14.** *Mosley v. Truckstops Corp. of America*, see note 9, supra; *Cimarron Feeders v. Tri–County Elec. Coop., Inc.*, 1991 OK 104, ¶ 6, 818 P.2d 901; *Messler v. Simmons Gun Specialties, Inc.*, 1984 OK 35, ¶ 25, 687 P.2d 121.

**15.** *Messler v. Simmons Gun Specialties, Inc.*, see note 14, supra; *Knight v. Estes*, 1963 OK 169, ¶ 14, 383 P.2d 879; Title 20 O.S.1991–3001.1 provides:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or for error in any matter of pleading or procedure, unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

See also, *Three "M" Investments, Inc. v. Ahrend Co.*, 1992 OK 33, ¶ 28, 827 P.2d 1324 (No error occurs if court refuses to give requested instructions if matters in requested instructions are covered by given instructions.); *Linn v. Barnett's Inc.*, 1972 OK 148, ¶ 30, 503 P.2d 1276 (Refusal to give requested instructions did not constitute error where matters set forth in the requested instructions were covered by other instructions given by the trial court.).

**16.** *Lee v. Volkswagen of America, Inc.*, see note 1, supra; *Fields v. Volkswagen of America, Inc.*, 1976 OK 106, ¶ 30, 555 P.2d 48.

verdict than it would have rendered, if the alleged errors had not occurred.[17]

¶ 17 With regard to causation, the omission of Ford's proposed instruction did not cause an entire absence of instructional support for Ford's causation defense. The jury was given two causation instructions. One informed the jury that the plaintiff's personal injuries must have been directly caused by the defect in the truck and its seat belt system.[18] The other instruction defined direct cause.[19] The instructions which were given, as applied to the evidence and issues presented, generally encompassed Ford's causation theory and did not foreclose a defense verdict on that theory. Additionally, Ford's theory, that the force of the collision was the cause of Johnson's injuries, was obvious throughout the trial. Having considered the instructions given, the evidence, and the issues raised, and the instruction requested, we conclude that the instructions given substantially covered the issues and that the applicable law was adequately and fairly explained to the jury. Nothing in the record indicates that the jury itself was confused on the issue or that its deliberations were affected.[20] The general causation instruction allowed Ford to escape liability had Johnson's brain injury occurred regardless of any defect.[21] Consequently, the omission of the requested instruction does not constitute reversible error under the facts presented.

17. *Woodall v. Chandler Material Co.*, 1986 OK 4, ¶ 13, 716 P.2d 652; *Cimarron Feeders v. Tri–County Elec. Coop., Inc.*, see note 14, supra; *Lee v. Volkswagen of America, Inc.*, see note 1, supra; *Missouri–Kansas–Texas Railroad Co. v. Harper*, 1970 OK 77, ¶ 15, 468 P.2d 1014.

18. Instruction No. 7 provides:
"MANUFACTURERS'/PRODUCTS LIABILITY–ELEMENTS
A party claiming damages under Manufacturers' Products Liability has the burden of proving each of the following:
1. Defendant manufactured and/or sold the truck with its seat belt system.
2. Defendant was in the business of manufacturing and/or selling such products;
3. The truck and its seat belt system was defective and because of the defect, the truck and its seat belt system was unreasonably dangerous to a person who uses, consumes, or might be reasonably expected to be affected by the truck and its seat belt system.
4. The truck and its seat belt system was defective at the time it was manufactured and/or sold by Defendant or left its control;
5. Plaintiff was a person who used, consumed, or could have reasonably been affected by the truck and its seat belt system;
6. Plaintiff sustained personal injuries directly caused by the defect in the truck and its seat belt system."

19. Instruction Number 10 provides:
"DIRECT CAUSE–DEFINITION
Direct cause means a cause which, in a natural and continuous sequence, produces injury and without which the injury would not have happened. For a defect in a product to be a direct cause it is necessary that some injury to a person in Plaintiff's situation must have been a reasonably foreseeable result of the defect.

There may be more than one direct cause of an injury. When an injury is the result of a defect in a product as well as the conduct of another person, both the defect and the conduct of the other person are direct causes of the injury regardless of the extent to which each contributed to the injury."

20. Accord, *Woodall v. Chandler Material Co.*, see note 17, supra, where the jury's question to the trial court indicated that it was confused.

21. Ford insists that because the jury was not properly instructed, it could have found it liable for injuries which were not caused by the defect. In *Kirkland v. General Motors*, see note 12, supra, we noted that comparative negligence was inapplicable to strict liability and we refused to apply contributory negligence in a strict sense. Rather, we said that causation is the defense and if some act of the plaintiff caused the injury, rather than the defective product, causation is missing and the plaintiff cannot recover. The concept of "enhanced injury" effectively apportions fault on a comparative basis because the defendant is liable only for the increased injury caused by its own conduct and not for the injury resulting from the crash itself. The problem with "second collision" cases is when an indivisible injury occurs and the cause of the accident is not a third party, but the plaintiff. Under the rationale of *Lee v. Volkswagen of America, Inc.*, see note 1, supra, when an indivisible injury occurs, the burden shifts to the manufacturer to show the extent of enhancement. If the manufacturer is unable to make such a showing, it becomes responsible for all of the plaintiff's injuries. Under the facts presented, Ford's theory was that all of Johnson's injuries were caused by the force of the collision and that none of the injuries were attributable to the failure of the seat belt. Had the jury determined that Ford's theory was correct, under the instructions which were given, it could have refused to award any damages to Johnson, but it did not.

## II.

¶ 18 **THE PLAINTIFF'S EVIDENCE WAS SUFFICIENT TO SUPPORT A JURY DETERMINATION THAT THE FAILURE OF THE SEAT BELT AND RESTRAINT SYSTEM CAUSED HIS INJURIES.**

¶ 19 Ford also argues that the jury verdict cannot be allowed to stand because Johnson's evidence was insufficient to support a jury determination that the failure of the seat belt and restraint system caused his injuries. Ford insists that Johnson offered no proof that, under the immense forces of the accident, the seat belt and restraint system would not have failed even if the seat belt and restraint system were not defective. Johnson argues that he offered sufficient evidence to meet his general burden of proof and to support the jury verdict.

¶ 20 Again, *Lee v. Volkswagen of America, Inc.*, 1984 OK 48, 688 P.2d 1283, is dispositive of Ford's argument. Pursuant to *Lee*, Johnson had the general burden of proving by a preponderance of the evidence that the product was in a defective condition which was unreasonably dangerous as defined by ordinary expectations when it left control of the manufacturer; and that after the original, initial impact the defect caused his injury. Johnson, like the plaintiff in *Lee*, sought damages for a principal injury which was indivisible. In *Lee*, the plaintiff offered sufficient evidence to meet his general burden of proof by offering testimony that: 1) his injury was caused by the defective door latch's failure to operate and his subsequent contact with the road; 2) the injuries more likely than not occurred as a result of the collision with the ground; and 3) there were other door latches available that operated in a safer manner.

¶ 21 A review of the record reveals that Johnson met the causation burden required by *Lee*. Johnson presented evidence showing that: he suffered permanent, critical brain injuries because the sharp edge of the seat belt latch plate, which was installed by Ford in its pickup truck, sliced through and severed the belt webbing during the collision, and that Ford knew of the dangers posed by the sharp edges of its restraint system. He presented testimony that the latch plate was defective; the seat belt was cut by the latch plate; that his injury was caused by the seat belt's failure; that he would not have sustained the permanent disabling injury had his seat belt remained intact; and that other, safer seat belt and restraint systems were available. Once Johnson met this burden, the burden of proving that Johnson's injury was attributable to the accident and not attributable to the manufacturer's defective product shifted to Ford.[22] Ford attempted to prove this by providing testimony in support of its theory that forces of the collision were responsible for the seat belt failure, regardless of any defect. In an appeal from a case tried and decided by a jury an appellate court's duty is not to weigh the evidence and determine which side produced evidence of greater weight, that job is reposed in the jury.[23]

## III.

¶ 22 **UNDER THE FACTS PRESENTED, PRE–JUDGMENT INTEREST COMMENCED FROM THE DATE THE CAUSE WAS FILED.**

¶ 23 Ford argues that the trial court erred in awarding Johnson pre-judgment interest commencing from August 6, 1998, the date the initial petition was filed, rather than from January 21, 1999, the day the summons was mailed to Ford. Ford relies on *Parker v. O'Rion Industries, Inc.*, 769 F.2d 647 (10th Cir.1985) in support of the proposition that it would be improper to hold it liable for pre-judgment interest during a delay that was entirely beyond its control. Johnson contends that pre-judgment interest is calculated from the date the petition was filed; and that *Parker* is distinguishable on its facts.

---

22. Failure of the trial court to instruct that the burden shifted to Ford can not be argued by Ford as the basis of error. *Lee v. Volkswagen of America, Inc.*, see note 1, supra, at ¶ 32.

23. *Florafax International, Inc., v. GTE Market Resources, Inc.*, 1997 OK 7, ¶ 3, 933 P.2d 282; *McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.*, 1992 OK 43, ¶ 10, 841 P.2d 568.

¶ 24 Pre-judgment interest is only awarded if authorized by statute. *Heiman v. Atlantic Richfield Co.*, 1995 OK 19, ¶ 14, 891 P.2d 1252; *Withrow v. Red Eagle Oil Co.*, 1988 OK 16, ¶ 10, 755 P.2d 622; *Sisney v. Smalley*, 1984 OK 70, ¶ 8, 690 P.2d 1048. Title 12 O.S. Supp.1998–727 authorizes pre-judgment interest in an action for personal injuries from the date the suit was commenced.[24] Title 12 O.S.1991–2003 provides that an action is commenced upon the filing of the petition.[25] The petition was filed in the district court on August 6, 1998. In *Parker,* the Tenth Circuit Court of Appeals considered the application of § 727 to a lawsuit which was delayed by the plaintiff who filed a suit in federal court after a prior state court suit was filed.

¶ 25 *Parker* involved a plaintiff who filed suit in Oklahoma state court and subsequently initiated a suit in federal court, ceasing to pursue its state court action. After the jury rendered a verdict in favor of the plaintiff, she sought pre-judgment interest commencing from the date of the filing of her state court action. The district court granted the plaintiff's request and on appeal, the Tenth Circuit reversed and remanded. It held that pre-judgment interest should have run only from the date on which the plaintiff filed her action in federal court, and that any delays resulting from the change in courts were the plaintiff's responsibility.

¶ 26 *Parker* is clearly distinguishable from the present cause on its facts. The *Parker* plaintiff filed one cause in state court, ceased to pursue it, and then filed another independent suit in federal court. The judgment awarding the plaintiff damages arose from the second suit. Here, there is only one lawsuit and any delays that occurred did not result from plaintiff's change of courts. Even if *Parker* were not distinguishable, on matters of state law we are not restrained by federal cases, but look first to our own decisions for authority.[26] Federal court decisions are not binding or controlling upon this Court when construing Oklahoma law.[27]

¶ 27 The record does not disclose why service was not accomplished earlier than January of 1999. Nevertheless, service of process is always timely if made within 180 days after the petition is filed.[28] The petition

**24.** Title 12 O.S. Supp.1998–727 provides in pertinent part:

> "A. Except as otherwise provided by this section, all judgments of courts of record shall bear interest at a rate prescribed pursuant to subsection I of this section.
>
> . . .
>
> E. Except as provided by subsection F of this section, if a verdict for damages by reason of personal injuries or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or detriment due to an act or omission of another is accepted by the trial court, the court in rendering judgment shall add interest on said verdict at a rate prescribed pursuant to subsection I of this section *from the date the suit resulting in the judgment was commenced to the date of the verdict. . . ."* (Emphasis supplied.)

The statute was amended in 1999. The current version of the statute provides that interest will begin from the date the suit was commenced to "the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment, or the date the judgment is filed with the court clerk." Title 12 O.S. Supp.1999–727.

We note that some states specifically allow for pre-judgment interest to begin accruing from the day process is served on the defendant. See, i.e., Alaska Stat. § 09.30.070 (2001); N.M. Stat. Ann. § 56–8–4 (2001)

**25.** Title 12 O.S.1991–2003 provides:

> "A civil action is commenced by filing a petition with the court."

The current version of the statute remains unchanged.

**26.** *Majors v. Good*, 1992 OK 76, ¶ 7, 832 P.2d 420.

**27.** *Ingram v. Oneok, Inc.*, 1989 OK 82, ¶ 17, 775 P.2d 810; See also, *Holloway v. Hopper*, 1993 OK 56, ¶ 5, 852 P.2d 711 [Interpretation given to federal statute by federal courts is not binding on Oklahoma Supreme Court's construction of similar provision in the Oklahoma Code of Judicial Conduct.]; *State v. Tolle*, 1997 OK CR 52, ¶ 5, 945 P.2d 503 [Decisions by federal court on pure question of state law is not binding on state courts.].

**28.** *Fischer v. Baptist Health Care of Oklahoma*, 2000 OK 91, ¶ 6, 14 P.3d 1292. Title 12 O.S. Supp.1996 2004 provides in pertinent part:

> "I. SUMMONS: TIME LIMIT FOR SERVICE. If service of process is not made upon a defendant within one hundred eighty (180) days after the filing of the petition and the plaintiff cannot show good cause why such

was filed on August 6, 1998, and service was mailed on January 21, 1999, and received on January 22, 1999. Service was timely made within 180 days after the petition was filed. The purpose of pre-judgment interest is to provide full compensation for the loss of use of money due as damages from the time the claim accrues until judgment is entered.[29] Under the facts presented, we are not convinced that the trial court's award of pre-judgment interest commencing from the date the cause was initially filed was erroneous.

## CONCLUSION

¶ 28 A judgment will not be disturbed because of allegedly erroneous instructions, unless it appears reasonably certain that the jury was misled thereby.[30] The test of reversible error in instructions is whether the jury was misled to the extent of rendering a different verdict than it would have rendered, if the alleged errors had not occurred.[31] Nothing in the record indicates that the jury was confused or that its deliberations were affected. The instructions which were given, as applied to the evidence and issues presented, generally encompassed Ford's causation theory and did not foreclose a defense verdict on that theory. Accordingly, omission of the instruction does not constitute reversible error under the facts presented.

¶ 29 A review of the record reveals that the appellee met the causation burden required by *Lee v. Volkswagen of America, Inc.*, 1984 OK 48, 688 P.2d 1283. The plaintiff presented sufficient evidence to support a jury determination that the failure of the seat belt and the restraint system caused his injuries. Additionally, because service was timely made after the petition was filed and the purpose of pre-judgment interest is to provide full compensation for the loss of use

of money due as damages from the time the claim accrues until judgment is entered, the trial court's award of pre-judgment interest commencing from the date the cause was initially filed was not erroneous.

**MOTION FOR ORAL ARGUMENT DENIED; AFFIRMED.**

¶ 30 HARGRAVE, C.J., WATT, V.C.J, HODGES, LAVENDER, SUMMERS, JJ., concur.

¶ 31 OPALA, J., concurs in part; dissents in part.

¶ 32 BOUDREAU, WINCHESTER, JJ., dissent.

service was not made within that period, the action may be dismissed as to that defendant without prejudice . . . ''
The current version of the pertinent portions of the statute remain unchanged.

29. *Withrow v. Red Eagle Oil Co.*, 1988 OK 16, ¶ 10, 755 P.2d 622. See also, *McDonald v. Schreiner*, 2001 OK 58, ¶ 7, 28 P.3d 574.

30. *Lee v. Volkswagen of America, Inc.*, see note 1, supra; *Fields v. Volkswagen of America, Inc.*, see note 16, supra.

31. *Woodall v. Chandler Material Co.*, see note 17, supra; *Cimarron Feeders v. Tri–County Elec. Coop., Inc.*, see note 17, supra; *Lee v. Volkswagen of America, Inc.*, see note 1, supra at ¶ 34; *Missouri–Kansas–Texas Railroad Co. v. Harper*, see note 17, supra.